JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant James Griffie appeals from his convictions on one count of drug trafficking and one count of possession of drugs.[1] The court also ordered that Griffie forfeit more than $8,000 in cash and several firearms. Griffie complains about the sufficiency and weight of the evidence, and further complains that the court erred by ordering the forfeiture.
 {¶ 2} The arresting officer was the state's primary witness. He testified that he and his partner had been on routine patrol in their zone car when they saw Griffie's car accelerating toward a tunnel on a patch of very rough road. They decided to "run" the license plate and follow the car. As they passed slowly under the bridge, they saw Griffie's car move left of the center dividing line. Griffie then pulled over, took a few steps from his car and began urinating by a wooded area next to the road. Intending to cite Griffie for crossing left of center and disorderly conduct, the officer exited the police car and ordered Griffie to approach. Griffie turned around and, upon seeing that the police had stopped, made a "furtive movement" on his right side. The officer then saw Griffie make an overhand "baseball" throw of a large white object that separated into smaller white objects. The officer ordered Griffie to the ground and arrested him. The police found 11 white baggies with cocaine scattered by the side of the road, and two more baggies *Page 4 
with cocaine inside Griffie's car. The baggies weighed one ounce each and were double-wrapped, a method of packing that the police said was sometimes used to avoid canine detection. The cocaine weighed a total of 364.34 grams, and a vice detective who testified at trial said that if the cocaine had been bought in one ounce increments, it would have a total street value of about $13,000. The police also found a cut, brown bag in the car. The bag appeared to have cocaine residue, along with a "casket," an item that is commonly used in the drug trade to transport and store cocaine. The brown bag also contained a pair of latex gloves.
 {¶ 3} Griffie gave the police permission to search his home. Prior to the search, he informed the police that he had several firearms and a quantity of cash. In one of the bedrooms the police found three .38 caliber handguns, one 9mm handgun, and a 12-gauge shotgun. The handguns all had live rounds. The police also discovered $8,240 of what Griffie characterized as "home equity money" hidden in some socks contained in a footlocker.
 {¶ 4} Griffie testified and said that he had been driving on a very narrow road when another driver came from the opposite direction. As he pulled aside to allow the other driver to pass, the driver threw a bag from the car. Griffie continued on but then decided to go around the block to where the bag had been thrown because he believed that he had seen money fluttering to the ground along with the bag. He stopped at the spot where the bag had been thrown and exited his car. After finding the bag, he placed it on the floor in the rear of the car. He went back to look for the *Page 5 
money he said had been thrown out with the bag. The police then pulled up and arrested him. He said that he had not been urinating when the police arrived, but that he might have told the police that he was urinating because they had their weapons drawn. Griffie denied throwing any bags.
 1. I {¶ 5} Griffie's first assignment of error relates to testimony that he made a "baseball" throw of the cocaine. Although this assignment of error is phrased in terms of sufficiency of the evidence, Griffie actually argues the weight of the evidence. He states the issue is whether it is even possible for a person to hold 11 one-ounce bags in one hand and throw them "baseball" style as described by the arresting officer. In his second assignment of error, he maintains that the state's evidence is beyond implausible because it offered nothing to substantiate the arresting officer's testimony. We consolidate these assignments for discussion.
 {¶ 6} The "manifest weight of the evidence" standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Otten (1986), 33 Ohio App.3d 339, 340. The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of *Page 6 
factual issues resides with the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 7} We find nothing so implausible about the arresting officer's testimony that it causes us to question whether the jury lost its way in finding Griffie guilty of possession. The jury saw the bags of cocaine and could rationally have concluded that it was possible for Griffie to throw the bags as described. One of the detectives testified that the cocaine was not in powder form, but had been compressed into a brick for easier shipment. When divided for sale, the cocaine had been compressed into balls and placed into individual plastic bags. These plastic bags were pulled tight against the ball, with the plastic knotted against the ball in such a way that the excess plastic formed a tail. It was therefore not beyond belief that Griffie could reach into his pockets and throw 11 plastic bags at once.
 {¶ 8} Griffie's insistence that the police should have documented with photographs the spot where he urinated is misplaced. Any disorderly conduct by Griffie was immaterial to the possession charge and had no bearing on whether he threw the cocaine as described by the arresting officer. The discovery of 364 grams of cocaine understandably sidetracked any investigation into Griffie's alleged disorderly conduct. Moreover, Griffie admitted that he told the officer that he had been urinating at roadside, so further documentation of the disorderly conduct *Page 7 
offense would have been unnecessary. At all events, the state's evidence relating to the seizure of the cocaine appeared to be consistent and plausible.
 {¶ 9} Griffie's version of the case, however, lacked plausibility. He could not explain why a passing motorist would abandon $13,000 worth of cocaine at the precise moment when he passed by. Although it is not unusual for drug trafficking suspects to abandon drugs while being chased by the police, it is the rare, if ever, occasion when thousands of dollars worth of drugs are simply abandoned without reason or provocation.
 {¶ 10} Griffie's explanation for the large amount of cash hidden in his house likewise lacked credibility. He said that the money was proceeds from a home equity loan, but provided no proof of that assertion. Importantly, he told the jury that his attorney had the documentation, so his failure to produce that documentation at trial adversely affected his credibility. We therefore conclude that the jury did not lose its way by finding Griffie guilty as charged.
 1. II {¶ 11} Griffie next argues that the court erred by ordering the forfeiture of the cash and guns found in his house, along with a cell phone taken from him upon his arrest. He maintains that the state failed to prove that any of these items were used or intended to be used in the commission or facilitation of the drug offenses, particularly since these same items were the subject of the possession of criminal tools count on which the court granted a judgment of acquittal.
 1. A {¶ 12} Even though the court entered a judgment of acquittal on the possession of criminal tools count encompassing the cash, guns and cell phone, that acquittal does not mean that forfeiture of those items cannot be ordered. In State v. Fannin, Cuyahoga App. No. 79991, 2002-Ohio-6312, we addressed a similar argument concerning cash recovered from Fannin following his arrest on drug possession charges. A jury found Fannin guilty on the possession count, but acquitted him on the possession of criminal tools count relating to the cash. The court ordered the cash forfeited to the state. We overruled Fannin's objections to the forfeiture, stating:
 {¶ 13} "Although the jury acquitted Fannin of criminal tool charges relating to the money, that fact alone did not change the character of the money as contraband. The elements of a charge of possessing criminal tools require that the offender use the tool with a criminal purpose. See R.C. 2923.24(A). Contraband is an item that is illegal because of its possession in the context of committing an act. Even though the jury did not find that Fannin used the money with a criminal purpose, that money could still be considered part of the criminal act. The testimony showed as much, as there was sufficient evidence to show that Fannin exchanged drugs for money. The money he held could be classified as contraband." Id. at T|84.
 1. B {¶ 14} Although an acquittal on possession of the criminal tools charges does not bar a forfeiture of those items encompassed within the criminal tools charges, we must nonetheless consider whether those items were subject to forfeiture.
 {¶ 15} Under former R.C. 2925.42(A),[2] a person who is convicted of or pleads guilty to a felony drug abuse offense loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies: (a) the property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act or (b) the property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act. The state must prove its entitlement to forfeiture by a preponderance of the evidence. See R.C. 2925.42(B)(3)(a).
 {¶ 16} The state offered no evidence under subsection (a) to show the cash, guns and cell phone constituted or derived from any proceeds that Griffie obtained either directly or indirectly from the sale of the cocaine. The state likewise offered no evidence to show that the cash, guns and cell phone were used in the commission of the offense. *Page 8 
 {¶ 17} Under subsection (b), however, Griffie's property may be subject to forfeiture if it was used or intended to be used in any manner to commit or facilitate the commission of the possession and trafficking charges.
 1. C {¶ 18} The state theorized that because Griffie had been in possession of one-third of a kilo of cocaine, "the other portion of the cocaine (2/3 of a kilo) had already been sold * * * and the money found could have been proceeds from those sales." Appellee's Brief at 9. This argument is sophistry, as one's possession of a mere part of a whole does not imply that one consumed or otherwise disposed of the other parts. It is possible that Griffie never had possession of the entire kilo. The absence of any drug trafficking instruments in either his car or house could suggest that he had not prepared the cocaine for sale from a larger quantity of cocaine.
 {¶ 19} We do, however, agree that the large amount of cash found in Griffie's bedroom is suspicious not only because it had been hidden in some socks in a footlocker, but because Griffie failed to substantiate his claim that the money constituted proceeds of a home equity loan. Had Griffie's explanation been true, it would have been a simple matter to produce documents showing that he had obtained a large amount of cash from a lender. Instead of producing these documents, he claimed on cross-examination that his "attorney had those papers." Those documents, if they existed, were not offered into evidence.
 {¶ 20} The failure to produce a provenance for the cash gave credence to the state's theory that the money could have been the proceeds of drug trafficking. Moreover, Griffie's decision to hide such a large amount of money tends to suggest that the cash may have been illicit. A reasonable trier of fact could have concluded by a preponderance of the evidence that, in consideration of Griffie's possession of a large quantity of cocaine, the large amount of cash hidden in his bedroom was the proceeds of drug trafficking, and thus had been used to commit or facilitate the commission of the offense.
 1. D {¶ 21} The state offered no evidence to show that the guns found in Griffie's house were used to commit or facilitate the commission of the drug offenses. Instead, it argued that trial testimony showed that "drugs and guns go hand in hand," so Griffie's only purpose in owning the guns was to facilitate drug trafficking.
 {¶ 22} This argument presents no evidence relating to how the guns were used to commit or facilitate the drug offenses. They were not found on Griffie at the time of his arrest. The handguns were found in a dresser drawer in a bedroom and the shotgun was kept near the bed. A police detective conceded that the guns were properly registered and that even though Griffie was licensed to carry a concealed weapon, he was not carrying any firearms at the time of his arrest. The detective further agreed that he did not find it "odd" that Griffie would not be carrying a firearm even though he had been carrying a substantial quantity of cocaine. This being the *Page 9 
case, it is apparent that Griffie's guns were not used in furtherance of the drug trafficking or to facilitate the drug trafficking.
 {¶ 23} We do agree with the state, however, that forfeiture was justified because Griffie's conviction on the felony drug charges in this case placed him under disability from having any firearm. R.C.2923.13(A)(3) states that no person shall knowingly have or acquire any firearm if that person "has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." "Contraband" is any property that, while not in and of itself unlawful for a person to acquire or possess, has been determined by a court to be contraband because of the circumstances of the person who acquires or possesses it. See R.C.2901.01(A)(13)(b). Griffie's conviction on the drug counts disabled him from having any firearms. His circumstances thus make firearms contraband to him. See State v. Mohn (Aug. 16, 1995), Medina App. No. 2388-M.
 {¶ 24} R.C. 2933.42(A) states that "[n]o person shall possess, conceal, transport, receive, purchase, sell, lease, rent, or otherwise transfer any contraband." Because the firearms were contraband to Griffie, they could be forfeited to the state. See R.C. 2933.41(C)(2). We therefore conclude that the court did not err by ordering that the firearms be forfeited to the state. Mohn, supra.
 1. E {¶ 25} The cell phone taken from Griffie at the time of arrest was not subject to forfeiture. The state offered no evidence of any kind to show that the cell phone had *Page 10 
been used in the commission of the offense or to facilitate the commission of the offense. Griffie's mere possession of the cell phone, without any nexus to the criminal activity, cannot justify forfeiture. We vacate the forfeiture of the cell phone.
Judgment affirmed in part and reversed in part.
It is ordered that the parties bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCUR
[1] The court granted Griffie's Crim.R. 29(A) motion for judgment of acquittal on count 3, which charged possession of criminal tools.
[2] Effective July 1, 2007, the General Assembly significantly changed the law relating to drug forfeiture by adopting R.C. Chapter 2981 titled "Forfeitures." Our further references to R.C. 2925.42 will be to the superseded statute in effect at the time of trial. *Page 1