JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Reynalda Larios, appeals her bench trial conviction for possession of drugs in violation of R.C. 2925.11
and possession of criminal tools in violation of R.C.2923.24.[1]
 {¶ 2} Defendant was at Cleveland Hopkins Airport changing planes. She had arrived from Los Angeles and had a continuing ticket to Rhode Island. Also on the flight from Los Angeles and scheduled to continue on to Rhode Island were her two co-defendants. The drug enforcement officers at Cleveland Hopkins Airport had received a call from the drug enforcement officers at Los Angeles Airport alerting them that the two co-defendants were suspected of being drug couriers. So they could speak to the two co-defendants, the drug enforcement officers were watching the flight and waiting at the gate as the passengers exited the plane from Los Angeles.
 {¶ 3} The officers had not been looking for defendant because she was not named by the Los Angeles officers. When she got off the plane, however, Detective Harrison of the Cleveland Police, who works as part of the airport drug enforcement team, noticed defendant carrying a clear plastic bag containing a ceramic container in the shape of a watermelon. Later, when Detective Harrison went to the gate where the Rhode Island flight was departing, she noticed that one of the two co-defendants, whom they had under observation, was now carrying the bag with the ceramic container that defendant had carried off the plane.
 {¶ 4} Discovering this connection between defendant and the two co-defendants under observation, the detective approached defendant, identified herself as a police officer, and asked permission to speak with defendant. Defendant said yes and voluntarily produced her driver's license and plane ticket. Detective Harrison noticed the baggage claim checks stapled to defendant's plane ticket, noted the numbers on them, and returned the license and ticket to defendant.
 {¶ 5} Detective Harrison then asked fellow officers in the baggage claim area to have the drug sniffing dog check the outside of defendant's luggage. Meanwhile, defendant had gotten on the plane and taken her seat. The dog indicated to the officers that defendant's luggage contained drugs, so Detective Harrison and a uniformed officer asked the pilot and flight attendants for permission to take defendant off the plane. Detective Harrison and the uniformed officer got on the plane, saw defendant sitting on the right side of the plane as they were facing her, and the uniformed officer proceeded down the aisle and stopped next to the seat behind defendant.
 {¶ 6} Detective Harrison motioned to defendant to stand up and defendant got out of her seat. A uniformed officer standing behind her noticed that she dropped a kleenex on the floor in front of her seat. The uniformed officer retrieved the kleenex and discovered that it contained two plastic bags with a substance later identified as cocaine. After defendant left the plane and was in the jetway, the uniformed officer showed Detective Harrison the cocaine and defendant was put under arrest. The officers obtained a search warrant for defendant's luggage, which did not contain any drugs.
 {¶ 7} Defendant filed a motion to suppress the cocaine, which motion the trial court granted. The state appealed[2] and this court reversed the trial court's decision as to this defendant. After she was convicted, defendant appealed, stating two assignments of error. The first assignment of error is:
 {¶ 8} "I. The court erred when it denied the defendant's motion to suppress when it was renewed at the close of all the evidence in this case."
 {¶ 9} Defendant claims, despite this court's ruling denying the motion to suppress, that the trial court erred in refusing to grant her renewed motion to suppress made during closing argument. She claims that Detective Harrison's testimony at the trial differed from her testimony at the suppression hearing and that this discrepancy showed that Detective Harrison lied. Defendant claims that this contradictory testimony should result in a suppression of the evidence.
 {¶ 10} Defendant has failed to demonstrate any contradictory evidence was presented at the suppression hearing. Defense counsel quoted Detective Harrison's allegedly conflicting testimony into the record at the trial:
 {¶ 11} "QUESTION: Did she dispose of anything before she was taken back to the airport?
 {¶ 12} "ANSWER: A tissue containing two small baggies of cocaine, well, suspected cocaine, at the time, which later proved to be cocaine.
 {¶ 13} "QUESTION: How did she dispose of it?
 {¶ 14} "ANSWER: She dropped it on the floor in front of where she was seated on the plane."
 {¶ 15} Trial transcript at 26. After quoting the above exchange at trial, defense counsel then asked Detective Harrison whether she had seen defendant drop the cocaine. Detective Harrison stated that she did not see it herself but that a uniformed officer saw defendant drop it.[3] The uniformed officer also testified at trial: he said he had seen her drop the cocaine. Defendant now claims that this testimony contradicts Detective Harrison's testimony from the suppression hearing. Defendant claims that Detective Harrison testified at the suppression hearing that she personally had seen defendant drop the cocaine. The testimony defense counsel read into the record, however, does not reflect this. Detective Harrison testified not that she had seen defendant drop the cocaine, only that defendant had done so.
 {¶ 16} A review of the allegedly conflicting testimony, as read into the record by defense counsel and as occurred at the trial, shows that there is no conflict in the testimony. Detective Harrison never testified that she actually saw
defendant drop the cocaine; she testified that defendant had dropped the cocaine.
 {¶ 17} Because defendant has failed to demonstrate any conflict in the testimony, the trial court did not err in denying her renewed motion to suppress. Accordingly, this assignment of error is overruled.
 {¶ 18} For her second assignment of error, defendant states:
 {¶ 19} "II. The guilty verdicts in this case were not supported by evidence sufficient to findings of guilt beyond a reasonable doubt."
 {¶ 20} Defendant claims that her conviction was not supported by sufficient evidence. When this court reviews a sufficiency argument,
 {¶ 21} "the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence."
 {¶ 22} State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 23} Defendant's argument concerning the possession of cocaine is that the uniformed officer's testimony was perjured. Defendant provides nothing to support this serious assertion. The record before this court shows that this eyewitness saw defendant drop the cocaine as she left her seat on the airplane. Although defendant testified that she did not have any cocaine, a mere conflict in testimony between the opposing sides does not satisfy the claim of insufficient evidence. As noted above, this court cannot weigh the evidence. Rather, we must view the evidence in the light most favorable to the state. The eyewitness' testimony is sufficient, if believed, to sustain the conviction for possession of cocaine. Next, defendant claims that the state failed to provide sufficient evidence to support her conviction for possession of criminal tools, the $7,000.00 she was carrying. The elements of the crime of possession of criminal tools are found in R.C. 2923.24, which states in pertinent part:
"(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
(B) Each of the following constitutes prima-facie evidence of criminal purpose:
 {¶ 24} * * *
(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."
 {¶ 25} The state has the burden of proving that the money in defendant's possession was used illegally. "Mere possession of cash is not unlawful. * * * To prove that money is contraband and therefore subject to forfeiture, `the state must demonstrate that is it [sic] more probable than not, from all of these circumstances, that the defendant used [the money] in the commission of a criminal offense.'" State v. Blackshaw (May 29, 1997), Cuyahoga App. No. 70829, 1997 Ohio App. LEXIS 2362, at *18-19, quoting State v. Golston, (1990), 66 Ohio App. 3d 423,431, internal citations omitted; State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804.
 {¶ 26} Similarly here, in order to prove that the money was a criminal tool, the state is required to prove that it was more probable than not that defendant used it to facilitate a criminal offense. Defendant claimed that the $7,000.00 the police found on her person at the time they arrested her was not drug money. Rather, she claimed that she used that money to buy and sell jewelry to her friends. Defendant stated that she was returning from caring for her sick father in California and that she had stayed at his house and driven his car while she was there and had essentially no expenses during her visit. She also testified that she worked for a plastics manufacturer in Massachusetts, where her mother was staying with her six children. The state was required to prove that defendant's explanation that she had the money for the purpose of buying and selling jewelry to her friends was not credible.
 {¶ 27} Detective Harrison testified that defendant dropped 18.22 grams of cocaine by her seat on the plane and that the street value of that quantity of cocaine at the time of her arrest in 2000 would have been between $300 and $400. Tr. 19. "This court has held that evidence the defendant knowingly transported, delivered or distributed drugs may be used by the jury to reasonably conclude that money possessed by the defendant was used to facilitate drug transactions as a criminal tool * * *." State v. Powell (1993), 87 Ohio App.3d 157, 168. See also, State v. McKenzie (Sept. 18, 1998), Erie App. No.E-97-040. A defendant's mere possession of money, however, while a defendant is in possession of drugs, without more, is not sufficient to prove that the money was used as a criminal tool. In State v.Williams (1995), 105 Ohio App.3d 471, a jury had found the defendant not guilty of possession of criminal tools despite the fact that the evidence showed a razor blade with cocaine residue on it, a pager, 41.21 grams of cocaine and over $500 in the apartment where he was arrested. Instead, the defendant inWilliams was convicted merely of possession of drugs. In order to prove that the money in a defendant's possession was indeed a criminal tool, the state is required to present evidence which shows, beyond a reasonable doubt, that the money was used to commit a criminal offense.
 {¶ 28} In cases in which this court has upheld a conviction for possession of money deemed to be a criminal tool, this court has also consistently found additional evidence of at least one of the following: that the defendant was caught in the act of selling drugs; he was also in possession of a pager which is a known tool for selling drugs, State v. Burnett (Mar. 20, 1997), Cuyahoga App. No. 70618; he was in possession of marked bills used by a confidential informant to purchase drugs, State v.Giles (May 2, 1996), Cuyahoga App. No. 69337; he was in possession of currency in small denominations to facilitate making change to customers; State v. Alicea (Nov. 17, 1994), Cuyahoga App. No. 66411, State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804 (in which defendant had $940 consisting of six $50 bills, thirty $20 bills, and four $10 bills).
 {¶ 29} Here, defendant had a significant amount of cocaine on her person, but the cocaine was not packaged for resale. Defendant clearly was not in the process of selling drugs on the airplane. None of the bills was marked, nor does the record reflect denominations; so there is no evidence any of the money was used in a drug transaction. Finally, the evidence does not show that defendant was in possession of a pager, the usual criminal tool found with drug dealers.
 {¶ 30} Without more, the evidence is not sufficient to prove beyond a reasonable doubt that the $7,000 defendant was carrying was drug money and, therefore, a criminal tool.
 {¶ 31} This assignment of error is affirmed as to the drug possession conviction but reversed as to the criminal tools conviction.
Affirmed in part, reversed in part and remanded.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., Concurs.
 Gallagher, J., Concurs in part and dissents in part withseparate concurring and dissenting opinion.
[1] This is the second appeal of this case, but the first filed by defendant. The state filed the first appeal.
[2] Case Nos. 80326, 80379 80380.
[3] In its opinion in the prior appeal, this court imprecisely reported that Detective Harrison observed defendant drop the handkerchief. It is clear in the record that Detective Harrison never said this. Rather, Harrison said she observed the cocaine in the Kleenex. It was another officer who observed defendant drop the Kleenex.
 CONCURRING AND DISSENTING OPINION