OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Maurice Watkins, appeals the November 2, 2007 decision of the Jefferson County Court of Common Pleas that convicted Watkins of trafficking in crack cocaine of more than one gram within one thousand feet of a school, in violation of R.C. 2925.03(A)(1) and (C)(4)(c), with a forfeiture specification of $2520.00, pursuant to R.C. 2925.42. On appeal, Watkins asserts that the trial court committed reversible error in imposing more than the minimum sentence for his offense and in forfeiting all of the money on Watkins's person at the time of his arrest. Watkins also claims ineffective assistance of counsel.
 {¶ 2} This court affirms Watkins's sentence and forfeiture, and overrules his claim of ineffective assistance of counsel. The sentence imposed was within the statutory range, and was imposed for reasons in accordance with applicable law. The trial court did not commit reversible error in its forfeiture decision because competent credible evidence indicated that the money was derived from a drug offense, and Watkins's explanation as to the source of the money was adequately discredited by the State. Finally, actions of counsel were within the realm of trial strategy, initial unpreparedness was cured by the court's continuances, and Watkins did not demonstrate prejudice. Thus, counsel was not ineffective. Accordingly, the judgment of the trial court is affirmed.
 Facts {¶ 3} On September 26, 2006, the Steubenville Police Department executed a controlled buy of crack cocaine, using an informant, with $150.00 in pre-recorded bills. The informant made recorded phone calls to Jerry Tillman to purchase the crack cocaine. The informant's meeting with Tillman took place near Steubenville High School, and was recorded and observed by Detective Jason Hanlin. Tillman made multiple phone calls to Watkins during the exchange with the informant. A person appeared in a white vehicle with license plate number DFP3200. Tillman took the informant's $150.00 to the white vehicle and came back with crack cocaine.
 {¶ 4} The police effected the arrest of Tillman, at which point they seized a cell phone, two crack pipes, and digital scales from him. The police found Watkins in the white vehicle shortly thereafter and seized two cell phones, the $150.00 of pre-recorded *Page 3 
currency, and an additional $2520.00 from Watkins. After Watkins was Mirandized, he stated that his mother had given him $1700.00, that the rest of the money he had on his person was from his carpeting job with Roger Muntz, and that he had received no money from anyone else. Watkins's mother appeared at the scene of Watkins's arrest, and stated that she had given money to Watkins.
 {¶ 5} On October 4, 2006, the Jefferson County Grand Jury indicted Watkins on one count of drug trafficking, with a specification that the act occurred within the vicinity of a school. The Grand Jury also included a forfeiture specification of $1640.00, which was corrected to $2520.00 in an amended indictment. Watkins retained the services of Attorney Sterling Gill.
 {¶ 6} Watkins's trial was originally set for November 28, 2006, and after multiple continuances was set for April 10, 2007. Watkins's counsel was not prepared on April 10th, and filed witness lists less than twenty four hours prior. The trial court admonished Watkins's attorney for his actions and then decided to convert the proceeding to a pre-trial. The court stated that it felt obligated to continue the trial to avoid a valid claim of ineffective assistance of counsel. The court emphasized the importance of providing Watkins with a fair trial, assured Watkins that there was no anger directed at him, but also stressed to Watkins that agreeing or acquiescing to counsel's unpreparedness in the future would be viewed with suspicion.
 {¶ 7} Watkins's counsel filed a Motion to Compel Exculpatory and Favorable Evidence as to the Identity of the Confidential Informant on April 17, 2007. Watkins's counsel was temporarily suspended from the practice of law from April 27, 2007 to May 3, 2007 for failure to complete Continuing Legal Education requirements. Watkins's counsel filed a Motion to Continue in light of his suspension, so that he could have more time to prepare for trial. Watkins's counsel also asked for a continuance in order to allow an expert witness ("Staubus") to testify. On June 12, 2007 the court held a pre-trial conference, during which counsel's suspension was discussed, and the trial date was set for August 7, 2007. Watkins's counsel filed a Motion to Suppress, Motion to Obtain Grand Jury Witness Testimony, Motion for Severance of Trial from Co-Defendant (Tillman), and a Motion in Limine regarding any statements made by Tillman. On July 6, 2007 the trial court heard these motions, and all were overruled except for the Motion to *Page 4 
Obtain Grand Jury Witness Testimony. The trial was set for September 25, 2007, but was continued again to October 25 in order for Watkins's counsel to obtain Staubus' testimony and due to confusion regarding hearing dates. Watkins's counsel did not depose Staubus or call Staubus to testify.
 {¶ 8} A trial on the merits took place on October 25 and 26, 2007. The State offered police audio and video recordings into evidence, as well as the telephone records of all parties involved, all confiscated items, copies of the pre-recorded $150.00, and a video surveillance tape of Watkins at a food mart. The State offered the testimony of the informant, Muntz, Hanlin, an expert witness regarding the crack-cocaine, and the principal of Steubenville High School regarding the school vicinity specification. Watkins offered the testimony of Watkins's mother, Jocelyn Watkins; Watkins's sister, Tonisha Watkins; Watkins's father, Roland Watkins; and Watkins's ex-fiancée, Adrian Forest.
 {¶ 9} During Watkins's direct and cross examinations of witnesses, Watkins's counsel was repeatedly stopped for asking leading or otherwise inappropriate questions. The trial court also admonished Watkins's counsel during sidebar discussions regarding what the court viewed as unseemly trial tactics. The trial court took issue with counsel's last minute attempts to introduce witnesses and evidence without prior disclosure.
 {¶ 10} On the subject of Watkins's money, Hanlin testified:
 {¶ 11} "A: [Watkins] said that, if I recall correctly, 15 or 17 hundred dollars came from his mother and the remainder of the money was from his carpeting business.
 {¶ 12} Q: And in fact his mother told you that she gave him money that night when he was arrested, didn't she?
 {¶ 13} A: Yeah, except she told me she gave him $3500.00."
 {¶ 14} Watkins stated on tape that he received $1700.00 from his mother a "couple of days ago," and that the rest was from working for his cousin.
 {¶ 15} Watkins's previous employer, Muntz, testified that he did not remember Watkins working for him during September, that Watkins worked for him sporadically, and that Watkins was only a regular employee for two to three weeks in March of 2006.
 {¶ 16} Jocelyn testified that Watkins's grandmother, Josephine Holley, had obtained a loan for $8000.00, and gave $4000.00 to Jocelyn on September 11, 2006. *Page 5 
Jocelyn gave $1700.00 to Watkins approximately one week later, with the expectation that Watkins would use the money to purchase a vehicle. Jocelyn testified that Holley directly gave Watkins $1000.00 around the same time, though Jocelyn did not know of this until around February of 2007. Jocelyn also testified that she came to the place of Watkins's arrest and told the police that she had given Watkins $1700.00.
 {¶ 17} Both the State and the defense claimed that Jocelyn specified on tape the amount of money she had given Watkins, though the State claims it was $3500.00 and the defense claims it was $1700.00. On review of the police tape, the statements of Jocelyn which were captured on the recording did not indicate any specific amount of money. On the recording, Jocelyn did generally maintain that she gave money to Watkins, and that the police were out of place in assuming that she did not have enough money to give any large amounts to her son.
 {¶ 18} At the close of the jury trial, Watkins was convicted of trafficking in drugs within one thousand feet of a school. Watkins opted to conduct the forfeiture hearing with the trial court as the trier of fact rather than the jury. At the opening of the sentencing and forfeiture hearing on October 31, 2007, Watkins's counsel moved for acquittal and/or mistrial based on the racial composition of the jury pool, the lack of evidence as to Watkins's guilt, Watkins's ignorance of his proximity to a school, the pace of the trial, admonishments of Watkins's counsel in front of the jury, and the exclusion of testimonial and documentary evidence of Holley's loan. Both sides presented arguments, and the trial court overruled the motion. The trial court noted its strong suspicions that Watkins's counsel was engaging in subterfuge as a trial tactic.
 {¶ 19} When the hearing proceeded to the subject of forfeiture, Holley was permitted to testify, though her incomplete and unsigned loan document was excluded. Holley testified that at some point in September of 2006 she had obtained a loan for $8000.00, paid off some debts and bills, gave $4000.00 to Jocelyn, and gave $1000.00 to Watkins so that he might purchase a car. Jocelyn provided testimony as to Watkins's living expenses around the time of his arrest. The trial court also took testimony from the trial into account for the purposes of forfeiture. The trial court again noted Watkins's counsel's deceitful tactics.
 {¶ 20} On the issue of sentencing, Watkins's counsel presented mitigation *Page 6 
arguments and Watkins stated that he was sorry. The trial court discussed Watkins's juvenile drug record, lack of employment, giving the probation department an alibi statement proven to be false, presenting badly conflicting stories at trial, and defiant behavior during trial. The trial court also noted that because Watkins was the active seller in the organized drug scheme, and because Watkins had a prior juvenile record, the minimum sentence would demean the seriousness of the offense. The trial court sentenced Watkins to three years in prison. Watkins indicated that he would appeal the decision. After the trial court explained that counsel could be appointed to Watkins on appeal, Watkins stated that he was "fine with Sterling Gill." At the end of the hearing, the trial court somewhat tersely stated that there was no question in his mind that the money was from the drug offense, and ruled to forfeit the entirety of Watkins's money. Watkins's counsel requested an appeal bond for Watkins, which the trial court denied on November 2, 2007.
 Sentencing {¶ 21} In his first of three assignments of error, Watkins argues:
 {¶ 22} "The trial court committed reversible error in sentencing the appellant to three years incarceration."
 {¶ 23} Watkins asserts that the trial court erred when it did not sentence Watkins to the statutory minimum sentence allowed for his conviction. Watkins states that there was insufficient evidence to sentence him above the statutory minimum of one year.
 {¶ 24} When reviewing a felony sentence, an appellate court must first review the sentence de novo to ensure that the sentencing court clearly and convincingly complied with the applicable laws. State v.Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. If this inquiry is satisfied, we then review the trial court's decision for abuse-of-discretion. Id. Trial courts have the discretion to impose a sentence within the statutory range for the offense, and are not required to give reasons for imposing more than the minimum sentence. Id. at ¶ 11, quoting State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 100. The courts still must carefully consider all of the statutes that apply to the felony case, including R.C. 2929.11
and R.C. 2929.12, which provide guidance regarding the purposes of sentencing and factors indicating or counter-indicating the seriousness of the offense or the likelihood of recidivism. State v. Mathis, *Page 7 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 38. However, the record need not indicate anything beyond the fact that the court considered such statutes. State v. Jones, 7th Dist. No. 05 CR 375,2008-Ohio-3336, at ¶ 14.
 {¶ 25} The offense of trafficking in crack cocaine in excess of one gram within 1,000 feet of a school is a felony of the third degree. R.C. 2925.03(C)(4)(c). The definite prison term for a third degree felony is between one and five years. R.C. 2929.14(A)(3). Watkins was given a three year sentence. The trial court explicitly stated that it considered all of the principles and factors of R.C. 2929.11 and R.C. 2929.12 when determining Watkins's sentence. The trial court also explicitly found that Watkins had a prior juvenile record for possession and trafficking of drugs, that he would be likely to commit future crimes, that he has shown no remorse for his actions, that he refused to stand for the jury verdict, that his defense was deceitful, that the drug offense was part of an organized scheme, that he was employable yet unemployed, and that "the minimum sentence demeans the seriousness of the offense and does not adequately protect the public in light of the organized nature of the offense, [Watkins's] lack of remorse, deceptive defense tactics and defiance."
 {¶ 26} Watkins's argument on appeal does not deny any of the above factors, but argues that they are not enough to allow a departure from the statutory minimum. The trial court had the discretion to impose a sentence between one and five years without explicitly giving any reasons, and consequently there is no weighing test. The reasons that the court did in fact give were neither contrary to logic nor to law. The trial court complied with felony sentencing statutes when it considered and applied R.C. 2929.11 and R.C. 2929.12 along with the underlying R.C. 2929.14(A)(3) and R.C. 2925.03(C)(4)(c). Therefore Watkins's first assignment of error is meritless.
 Forfeiture {¶ 27} In his second assignment of error, Watkins argues:
 {¶ 28} "The trial court committed reversible error in ordering the forfeiture of $2,250.00 in cash found on the appellant at the time of his arrest."
 {¶ 29} Watkins argues that the State did not prove by a preponderance of the evidence that any money beyond $150.00 was connected to a criminal act or enterprise. *Page 8 
Watkins contends that the court therefore erred when it ordered the forfeiture of the $2,250.00 seized from Watkins at the time of his arrest.
 {¶ 30} Watkins's indictment included a forfeiture specification pursuant to R.C. 2925.42. The statute was significantly changed and surrounding forfeiture sections were repealed and replaced by R.C. Chapter 2981 effective July 1, 2007. See 2006 Sub. H.B. No. 241. Trial courts were instructed to apply the new law to pending trials to the extent practical. Id. at section 4.
 {¶ 31} When a person is convicted of a felony drug abuse offense, the court holds a separate proceeding to determine whether any property is subject to forfeiture. R.C. 2981.04(B). A forfeiture action, while criminal in nature, is a civil proceeding against the seized property.Lilliock, supra. A trial court is not limited to the underlying offense when deciding a forfeiture action. The action may proceed against property derived from an act that is considered to be a felony drug offense, regardless of the subsequent charges, convictions, or lack thereof. State v. Parks, 8th Dist. No. 90368, 2008-Ohio-4245, at ¶ 26;In re: Seizure of 1998 Dodge Durango, 6th Dist. No. L-04-1295,2005-Ohio-6004, at ¶ 12. However, the law generally does not favor forfeiture, and such statutes must be strictly construed against the state. Lilliock, supra; State v. Hill, 70 Ohio St.3d 25, 31,1994-Ohio-12, 635 N.E.2d 1248.
 {¶ 32} Property subject to forfeiture includes "[p]roceeds derived from or acquired through the commission of an offense." R.C. 2981.02(A)(2). The term "proceeds" generally includes any property derived directly or indirectly from an offense, and is not limited to the net gain realized from the offense. R.C. 2981.01(A)(11)(a).
 {¶ 33} The State must prove by a preponderance of the evidence that the seized property is subject to forfeiture under R.C. 2981.02. R.C. 2981.04(B). There is a rebuttable presumption that the property is subject to forfeiture if the State proves, by a preponderance of the evidence, that 1) the defendant acquired the property during the commission of an offense or within a reasonable time afterwards, and 2) that there is no likely source of that property other than as proceeds from the offense. State v. Balwanz, 7th Dist. No. 02-BE-37,2004-Ohio-1534, at ¶ 45-47; R.C. 2981.03(A)(5)(a).
 {¶ 34} When reviewing a judgment based on a preponderance of the evidence, an *Page 9 
appellate court should not reverse the judgment if there is "some competent, credible evidence going to all the essential elements of the case." Balwanz at ¶ 48, quoting C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. Therefore, as long as there is some competent, credible evidence that Watkins acquired the money in association with a drug offense, and that Watkins had no likely other source of that money, then this court should not reverse the decision of the trial court.
 {¶ 35} The trial court could not find that Watkins's money was from a criminal association solely from the fact that Watkins had a large amount of money on his person; the mere possession of cash is not unlawful. Garono v. State (1988), 37 Ohio St.3d 171, 176,524 N.E.2d 496; State v. Lilliock (1982), 70 Ohio St.2d 23, 24 O.O.3d 64,434 N.E.2d 723. The burden is on the State to show that it is more likely than not that the defendant's money is connected with a criminal offense. State v. Golston (1990), 66 Ohio App.3d 423, 431,584 N.E.2d 1336. While the court may have strong suspicions about the case, "the forfeiture of one's personal property can only be justified under established facts." Id. at 435 (internal citations omitted).
 {¶ 36} According to various Ohio appellate cases, facts that may indicate that a sum of money is connected to a criminal drug offense include:
 {¶ 37} (1) The money seized is a large sum in small denominations.State v. Owens, 9th Dist. No. 23267, 2007-Ohio-49, at ¶ 15; State v.Larios, 8th Dist. No. 83507, 2004-Ohio-5730, at ¶ 28; Balwanz at ¶ 50.
 {¶ 38} (2) The money was found with items associated with drug trade, such as a pager or cellular telephone. Owens at ¶ 15; Larios at ¶ 28.
 {¶ 39} (3) The money was found with tools of the drug trade, such as paraphernalia, scales, or the drugs themselves. State v. Harris, 12th Dist. No. CA2007-04-089, 2008-Ohio-3380; Copley Tp. Trustees v.$10,600.00 in U.S. Currency (Dec. 30, 1998), 9th Dist. No. 18985, at *3.
 {¶ 40} (4) The defendant was caught in the act of selling drugs.Larios at ¶ 28.
 {¶ 41} (5) The defendant possessed marked bills from an informant.Larios at ¶ 28-29.
 {¶ 42} However, other Ohio appellate cases have indicated that the existence of *Page 10 
many of these facts still may not allow the inference that the money came from a criminal enterprise. State v. Ali (1997),119 Ohio App.3d 766, 769, 696 N.E.2d 285.
 {¶ 43} In Ali, the police found $15,040.00 in a brown bag, a small amount of marijuana, and a rock of cocaine in the defendant's car. Id. at 767. Police also confiscated a cellular phone and a pager that "went off continually." The defendant claimed that he obtained the money from his father and two friends for his used clothing store, and the father and one friend gave corroborating testimony. Id. at 770. The court stated that the small amount of drugs found indicated drug abuse rather than drug trafficking, and the narcotic odor detected on the money itself could just as well prove that defendant was handling the money while using drugs. Id. Although the pager and the claimed source of the money were suspicious, there was no evidence given to contradict the defendant's claim. Id. Consequently, the court in Ali held that the state did not meet its burden of proof, and reversed the forfeiture decision. Id.
 {¶ 44} Another court explained that, even in the face of suspicious circumstances, if a defendant gives "legitimate reasons for carrying thousands of dollars in cash" without contradicting evidence from the state, the defendant is much more likely to succeed in a forfeiture hearing. Copley Tp. Trustees at *3. See also, State v. Roberts (1995),102 Ohio App.3d 514, 518-19, 657 N.E.2d 547, where $24,025 found with heroin, cocaine, crack pipe, and syringes was not forfeited because the state provided no evidence to contradict defendant's "implausible" explanation that the money was from gambling profits and disability income. Thus, if the defendant gives an explanation regarding the source of the money, the state must prove that the explanation is not credible in order to succeed in a forfeiture action. Larios at ¶ 26.
 {¶ 45} This court most recently analyzed the propriety of forfeiture pursuant to a felony drug offense in State v. Balwanz: Police apprehended Balwanz, found $5,385 on his person, and later found a bag of cocaine. Balwanz was convicted of possession of drugs. During the forfeiture hearing, Balwanz testified that his father had given him a loan of $6,000 the day before his arrest, in order to purchase a carry-out store. Balwanz at ¶ 49.
 {¶ 46} The prosecution presented evidence that drug transactions are generally *Page 11 
executed using cash, and that the people involved in drug transactions carry large amounts of cash in small denominations. The prosecution also pointed out that the amount actually captured from Balwanz was $615 less than the alleged loan, and Balwanz did not explain where that money went in one day. Id. at ¶ 50. This information was enough to convince this court that the prosecution had sufficiently attacked the credibility of Balwanz's explanation of the source of the money, and therefore met its burden of proof for the purpose of forfeiture. Id. at ¶ 51.
 {¶ 47} In this case, Watkins was caught in the act of selling drugs, Watkins had a large amount of money in small denominations, the money was found along with two cellular telephones, and the money seized included $150.00 of recorded currency from an informant. These facts amount to competent, credible evidence that Watkins acquired the money in association with a drug offense, consistent with Owens,Balwanz, and other cases discussed above. However, Watkins's explanation of the source of the money needs to have been sufficiently discredited by the State in order for the forfeiture to be valid, as indicated byAli and Larios.
 {¶ 48} Watkins's explanation of the origin of the money was that $1700.00 was from his mother, Jocelyn, and the rest was from his wages working for Muntz. Jocelyn and Watkins's grandmother, Holley, both corroborated his statement as to the $1700.00. However, Jocelyn and Holley contradicted Watkins's statement as to the origin of the remaining $820.00: they testified that Holley had given Watkins $1000.00 around the same time that Jocelyn had given him the $1700.00. Muntz's testimony also contradicted Watkins's statement that the rest of the money was from work: Watkins had not worked as a regular employee for Muntz since March of 2006.
 {¶ 49} Detective Hanlin testified that he recalled Jocelyn stating on the night of Watkins's arrest that she had given Watkins $3500.00, not $1700.00. The police tape of Jocelyn does not seem to reveal any clear statement about a specific amount of money. Jocelyn did state on tape that she worked for Wheeling-Pittsburgh Steel, apparently as an argument that she had plenty of money to give her son. She did not mention any loan or other provision of money through Holley.
 {¶ 50} The State firmly discredited Watkins's claims to the $820.00, but it is a closer call whether the State sufficiently discredited claims regarding the remaining *Page 12 
$1700.00. Watkins's claim regarding $820.00 of the money was unambiguously contradicted by Jocelyn, Holley, and Muntz. However, the State's only specific attack against Watkins's claims as to the $1700.00 was that the defense kept changing the story, with different witnesses saying different amounts at different times. Upon review of the record, this is not the case: all parties were consistent in their testimony related to the specific amount of $1700.00. However, the overall credibility of Jocelyn and Holley was sufficiently impeached due to their other conflicting statements, which undermined their claims regarding the remaining $1700.00. The State attacked the overall credibility of Watkins's claims to an extent consistent with this court's decision in Balwanz, and thus managed to surpass its relatively low burden of preponderance of the evidence.
 {¶ 51} The State has adequately proven that Watkins's money was derived from a criminal offense, and that Watkins had no likely other source for that money, by a preponderance of the evidence. Furthermore, even though it may be a close call as to whether the State had met its burden of proof regarding the entirety of the seized money, the foregoing evidence amounts to some competent and credible evidence on which the trial court could have based its decision. The trial court's forfeiture order was not in error, and Watkins's second assignment is meritless.
 Effective Assistance of Counsel {¶ 52} In his third assignment of error, Watkins argues:
 {¶ 53} "The appellant's sixth amendment right to the effective assistance of trial counsel was violated."
 {¶ 54} To prove a claim of ineffective assistance of counsel, the appellant must satisfy a two-pronged test. First, the appellant must establish that counsel's performance fell below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. This court must determine, after considering all of the circumstances, whether counsel's actions were "outside the wide range of professionally competent assistance." Strickland at 690. Second, the appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient *Page 13 
performance, the appellant must prove that, but for counsel's errors, the result of the proceedings would have been different.Bradley at paragraph three of the syllabus.
 {¶ 55} The appellant bears the burden of proving counsel's alleged ineffectiveness, since the law of Ohio presumes that a licensed attorney is competent. State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905. If an appellant cannot show how counsel's errors undermined the reliability of the court's decision, there is no basis for finding that appellant's right to counsel had been violated.State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, at ¶ 109; Strickland at 693. Such proof of ineffective assistance of counsel must be more than vague speculations of prejudice. State v.Otte, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.
 {¶ 56} Ineffective assistance arises when counsel provides little more than his presence as a body in a chair, State v. Blair,171 Ohio App.3d 702, 2007-Ohio-2417, 872 N.E.2d 986; completely fails to prepare for trial, State v. Biggers (1997), 118 Ohio App.3d 788, 694 N.E.2d 108; or fails to discover rules of law which would be crucial to the caseState v. Kole, 92 Ohio St.3d 303, 2001-Ohio-191, 750 N.E.2d 148.
 {¶ 57} By contrast, ineffective assistance generally does not arise when counsel merely uses questionable tactics in the course of his advocacy. State v. Jalowiec, 91 Ohio St.3d 220, 237, 2001-Ohio-26,744 N.E.2d 163. Poor trial tactics, "even with disastrous result, may hardly be considered lack of due process." State v. Clayton (1980),62 Ohio St.2d 45, 48-49, 402 N.E.2d 1189. Moreover, even in the event that an attorney has failed to prepare for trial or has otherwise made an unprofessional error, a court may still remedy the situation in many ways, including granting continuances to allow the attorney to better prepare. Biggers at 788.
 {¶ 58} Watkins argues that his counsel was ineffective because he filed witness lists and document production after the start of trial, appeared at the original trial date unprepared despite having been granted three continuances, attempted a name alteration on a witness list and possible presentation of an alibi defense without disclosure to the prosecution, and repeatedly asked improper questions during trial. Because of the attorney's procedural improprieties, Holley was not allowed to testify at trial, and evidence of Holley's alleged $8000.00 loan was excluded both at trial and at the *Page 14 
forfeiture hearing.
 {¶ 59} The record also reflects that Watkins's counsel actively advocated for Watkins. Watkins's counsel filed and argued many pretrial motions in a timely manner, including a motion to sever, motion to reveal identity of confidential informant, and motion to disclose exculpatory evidence. Although there were times that Watkins's counsel was not prepared, he was granted continuances at such instances. On the date the trial went forward, Watkins's counsel was not unprepared as before. Watkins's counsel's knowledge and preparation was plainly exhibited in his thorough questioning during voir dire, direct and cross examinations, and post-trial motions.
 {¶ 60} Even assuming Watkins's counsel provided truly defective representation, Watkins was not prejudiced to the point of not receiving a fair trial. Had Watkins's counsel filed everything in a timely manner, not asked for continuances, and had Holley's testimony and loan document admitted, nothing indicates that there would have been a reasonable probability of a different outcome in Watkins's case. The jury convicted Watkins of drug trafficking from strong evidence, including video and audio recordings of the incident, vehicle identification, marked currency from an informant, and phone records between Watkins and the other individuals involved in the drug transaction. Holley's testimony about her loan and subsequent monetary gift to her daughter and grandson would have, at most, only spoken to the $2520.00 on Watkins's person at the time of his arrest, and not to the main body of evidence used to convict Watkins.
 {¶ 61} Given that Holley's testimony and loan document were more important to Watkins's forfeiture specification rather than the underlying offense, prejudice could have been more likely in the separate context of the forfeiture hearing. The trial court did allow Holley to testify for the forfeiture hearing, but the loan document was still inadmissible. However, as discussed above, Holley's testimony was in plain contradiction to part of Watkins's own statement. Thus documentary evidence in support of Holley's contradicted claim would most likely not have changed the outcome in Watkins's forfeiture hearing. As to the difficulties with Holley's testimony and evidence, the court stated "I don't think that was an oversight or screw up. I think that was a defense tactic to add secrecy to a weak defense." This statement is one of many that indicate the trial court was wholly convinced that Watkins's counsel was prepared and understood exactly what he was doing, and *Page 15 
presented matters in the way that he did and with the timing that he did as part of his strategy for the case.
 {¶ 62} Finally, beyond pointing out that the trial court stated that Holley and the loan document might be critical to Watkins's case, Watkins does not explain how he was prejudiced by counsel's acts. Watkins is perhaps implying that his counsel did so many questionable things that the trial court and jury would dislike Watkins's counsel and Watkins to the point that a fair trial would be impossible. However, throughout the trial the court took great pains to ensure that Watkins received a fair trial, and that Watkins understood and was satisfied with what his counsel was doing.
 {¶ 63} Thus we cannot say that counsel's performance was deficient or that any deficiency would have affected the jury's decision or the trial court's sentencing and forfeiture decision. Watkins's third assignment of error is meritless.
 Conclusion {¶ 64} Watkins does not challenge his conviction on this appeal. He challenges the court's decisions in sentencing and forfeiture, as well as the performance of his trial counsel. Watkins's sentencing argument fails because his sentence was within the statutory range, and was imposed for reasons in accordance with applicable law. Watkins forfeiture claim is meritless because there was competent credible evidence that the money was derived from a drug offense, and Watkins's explanation as to the source of the money was adequately discredited by the State. Watkins's ineffective assistance of counsel claim fails because counsel's actions were within the realm of trial strategy and did not undermine the reliability of the trial court's decision. Watkins's assignments of error are meritless.
 {¶ 65} Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1