[Cite as *State v. Brownridge*, 2010-Ohio-104.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  9-09-24

    v.

CHIA BROWNRIDGE,                    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 08-CR-486

**Judgment Affirmed**

Date of Decision:   January 19, 2010

APPEARANCES:

    *Kevin P. Collins*  for Appellant

    *Gregory A. Perry*   for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Chia Brownridge, appeals the judgment of the Court of Common Pleas of Marion County convicting her of possession of cocaine, possession of crack cocaine, and tampering with evidence, sentencing her to an aggregate ten-year prison term, and ordering her to forfeit $3,821 seized from her residence to the Marion Metropolitan Drug Task Force (hereinafter "MARMET"). On appeal, Brownridge argues that the record contained insufficient evidence to support the forfeiture of the cash seized from her residence, and that the trial court abused its discretion by imposing an extreme and unfair sentence. Based upon the following, we affirm the judgment of the trial court.

{¶2} In November 2008, the Marion County Grand Jury indicted Brownridge on Count One: possession of cocaine in violation of R.C. 2925.11(A),(C)(4)(d), a felony of the second degree; Count Two: possession of crack cocaine in violation of R.C. 2925.11(A),(C)(4)(d), a felony of the second degree; Count Three: tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; and, Count Four: trafficking in crack cocaine in violation of R.C. 2925.03(A)(2),(C)(4)(e), a felony of the second degree. Additionally, Counts One, Two, and Four contained forfeiture specifications of $3,821 in cash.

{¶3} In December 2008, Brownridge entered a plea of not guilty to all counts in the indictment.

{¶4} In March 2009, the case proceeded to trial at which the following evidence was heard.

{¶5} Detective Rob Musser of the Marion Police Department, MARMET division, testified that, on November 17, 2008, he and a team of law enforcement officers executed a search pursuant to a warrant at 653 Bartram Avenue in the city of Marion, county of Marion (hereinafter "the residence"); that the warrant authorized a narcotics search, including any drugs, drug paraphernalia, drug proceeds, or proof of drug transactions; that Brownridge lived at the residence; that, as the team approached the residence, he observed the curtains moving as though someone looked outside and shut the curtains again; that Detective Ryan Ward knocked and announced that the sheriff's office was present with a warrant, and ordered the occupant to open the door; that, after receiving no response, he kicked the door open and the team went into the house; that he was the first officer through the door and observed Chimere Brownridge, Chia's sister, standing in a hallway just outside of a bathroom door; that he grabbed Chimere and passed her back to the other officers; that he looked inside the bathroom and observed Brownridge standing over top of the toilet; that he heard the sound of water running as though the toilet had just been flushed; that the water in the toilet was

still swirling and he observed a baggie containing a white substance that appeared to be cocaine floating in the water; that the team proceeded to secure the residence and found that Brownridge and Chimere were the only occupants; that, after the residence was secured, someone removed the baggie from the toilet and placed it on the sink; and, that he also retrieved a small piece of powder cocaine from the floor.

{¶6} Detective Musser continued that he entered the southwest bedroom in the residence and saw a stack of $451 sitting on a dresser; that he found several pieces of mail addressed to Brownridge at the residence address inside a dresser drawer in the bedroom; that he found a box of sandwich baggies on the floor of the bedroom closet; that he went through clothing hanging in the bedroom closet, and discovered $3,020 inside a jacket pocket; that he proceeded to search the kitchen and discovered a digital scale inside a drawer; that he overheard Brownridge stating that everything in the residence belonged to her, including the cocaine, and that Chimere was just visiting and was not involved with the drugs; that the other officers discovered a large baggie of cocaine that contained forty-four individually wrapped crack rocks; that he did not observe any evidence of individual drug use, such as pipes, in the residence; that drug traffickers use digital scales to weigh their product for sale; that drug users and traffickers typically use torn corners of sandwich baggies to package cocaine and crack cocaine; and, that the value for

powder cocaine was $80 to $100 per gram, and the value for crack cocaine was $100 per gram.

{¶7} On cross-examination, Detective Musser testified that he found men's shoes and clothing in the residence; that $451 was an odd denomination of money; that the $3,020 pile of money was found in a man's jacket hanging inside the closet; and, that he could not know the source of the $451 or the $3,020 in cash.

{¶8} Detective Dan Ice of the Marion Police Department, MARMET division, testified that he assisted with the execution of a search warrant at the residence; that, when he entered the residence, Brownridge was lying on the living room floor; that, once the residence was secured and the evidence discovered, he assisted in collecting the evidence and creating an inventory list; that nineteen total items were seized from the residence; and, that he could not tell whether the pictures of clothing and shoes in evidence were men's or women's.

{¶9} Detective Ryan Ward of the Marion County Sheriff's Office, MARMET division, testified that he participated in the execution of a search warrant at the residence; that he observed movement of the blinds or curtains as the officers approached the front door; that, upon entry, he observed Chimere Brownridge standing by the bathroom door; that Detective Musser said that Brownridge was in the bathroom and had flushed the toilet; that Brownridge and

Chimere were the only people found in the household; that, in the living room, he found a pair of pants with $350 in the pocket; that he did not know to whom the pants belonged; that the living room also contained a digital camera, a 52" television, and a computer; and, that, in the northeast bedroom, he located a video game system and six pairs of brand new men's athletic shoes.

{¶10} Detective Aaron Corwin of the Marion County Sheriff's Office, MARMET division, testified that he assisted in executing the search warrant at the residence; that, as the officers approached the residence, he could hear movement and commotion inside; that he believed this indicated the occupants had discovered that the officers were approaching; that he searched the living room and discovered a baggie of individually packaged cocaine in the drawer of a coffee table; that he also discovered a credit card with Brownridge's name on it; that he discovered a surround sound system, an Xbox video gaming system, and six boxes of brand new athletic shoes in one of the bedrooms or storage rooms; that he collected these items as evidence because he believed they were possibly stolen items that were typically traded for drugs; and, that he had no way of knowing where the items or the individually packaged cocaine came from.

{¶11} Lieutenant B.J. Gruber of the Marion Police Department, MARMET division, testified that one of the bedrooms contained predominately men's clothing, including jerseys and athletic attire, and that there were also photographs

of men; that he was familiar with Brownridge prior to the search and was aware that she rented the residence and that she had a brother, Ronnel Brownridge, who was incarcerated at the time of the search; that she knew Ronnel and Brownridge had lived together in the past; that, after the officers executed the search and collected evidence, he used the restroom in the residence; that, after he flushed the toilet, he realized that the toilet was clogged and suspected that they had not retrieved all of the drugs that Brownridge flushed; that he called a plumber to come and remove the toilet from the floor; that, with the plumber's assistance, he recovered a baggie of cocaine from the bottom of the toilet; and, that a portion of the cocaine had clearly been penetrated by water and had turned into a "sludge" (trial tr., p. 240). Detective Gruber testified on cross-examination that he did not know if anyone else lived at the residence, and that the presence of men's clothing at the residence would indicate that a male either lived at the residence or stored things there.

{¶12} Detective Christy Utley of the Marion County Sheriff's Office, MARMET division, testified that she assisted with execution of the search warrant at the residence; that she overheard Brownridge stating that the money recovered was Chimere's money, which she had been saving for Christmas shopping, and that the drugs recovered from the bathroom belonged to her and not Chimere; that she later questioned Brownridge, and she stated that the drugs located in the toilet

were hers, and that she got scared and dropped them in the toilet when the officers came into the residence; that she claimed that the money found in the residence was not drug money, but belonged to Chimere; that Brownridge also admitted she had been unemployed for some time, and had previously worked at McDonalds for $7 an hour; that she was unaware if Brownridge was receiving any type of public assistance; and, that Brownridge tested positive for cocaine use.

{¶13} Scott Dobransky of the Bureau of Criminal Identification & Investigation, testified that he tested the drugs seized from the residence; that the first bag he analyzed was a larger bag that contained forty-four individual bags of crack cocaine; that the total weight of cocaine contained within the forty-four bags was 6.8 grams; that the second bag contained 49.3 grams of cocaine; that the third bag he analyzed contained 60.3 grams of cocaine; and, that the fourth bag contained 2.6 grams of cocaine.

{¶14} Detective Mark Elliot of the Marion Police Department, MARMET division, testified that he interviewed Brownridge following her arrest. Thereafter, the State introduced into evidence a video recording of Brownridge's police interview with Detective Elliot, during which she stated that she abused cocaine, which she smoked out of a can, but that she did not sell it; that she did not use or purchase "a lot" of cocaine; that the cocaine found did not belong to Chimere; that the money found was Chimere's that she earned from her job, but that Chimere

could not provide a paycheck as evidence because she was paid in cash; that she lived at the residence by herself; that she had the televisions for many years and some did not even work; that the other items in the home were "hand-me-downs" and had not been purchased with "drug money"; that she had been unemployed for seven months, and had previously worked at McDonald's for $7 an hour; and, that she did not try to flush the cocaine, but accidently dropped it in the toilet because she was scared.

{¶15} Thereafter, Detective Elliot testified that, prior to obtaining the warrant to search the residence, he had removed items from Brownridge's trash including twenty-four plastic baggies with torn corners and white residue, one baggie with suspected marijuana stems and seeds, and one baggie with a substance that tested positive for cocaine; and, that, although Brownridge indicated that she smoked cocaine out of a can, he did not find a can like that in the trash.

{¶16} Thereafter, the State rested. Brownridge moved for acquittal pursuant to Crim.R. 29, which the trial court denied. Brownridge declined to testify on her own behalf or call any witnesses.

{¶17} Subsequently, the jury returned a verdict finding Brownridge guilty of Count One, possession of cocaine; Count Two, possession of crack cocaine; and, Count Three, tampering with evidence. The jury found Brownridge not guilty of Count Four, trafficking in crack cocaine.

{¶18} In April 2009, the trial court accepted the jury's verdict and sentenced Brownridge to a mandatory five-year prison term on Count One; a mandatory two-year prison term on Count Two; and, a three-year prison term on Count Three. Additionally, Brownridge waived her right to a jury trial on the forfeiture specification, and the trial court found by a preponderance of the evidence that the property described in the indictment was subject to forfeiture, and ordered Brownridge to forfeit $3,821 to MARMET.

{¶19} It is from her sentence and order of forfeiture that Brownridge appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT THE FORFEITURE OF THE CASH FOUND IN THE RESIDENCE.**

*Assignment of Error No. II*

**THE COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AND ABUSED ITS DISCRETION BY IMPOSING AN EXTREME AND UNFAIR SENTENCE.**

*Assignment of Error No. I*

{¶20} In her first assignment of error, Brownridge argues that the record contains insufficient evidence to support forfeiture of the cash found in the residence. Specifically, she argues that the State did not produce any evidence

that she acquired the cash during the commission of an offense or within a reasonable time afterward. We disagree.

**{¶21}** The State bears the burden of proof by a preponderance of the evidence that property is subject to forfeiture under R.C. 2981.02. *State v. Watkins*, 7th Dist. No. 07 JE 54, 2008-Ohio-6634, ¶33. On review, an appellate court may not reverse the trial court's decision on preponderance of the evidence where there is "'some competent, credible evidence going to all the essential elements of the case.'" *Watkins*, 2008-Ohio-6634, at ¶34, *quoting C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, at syllabus.

**{¶22}** Generally, forfeiture is not favored in Ohio. *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, ¶8. "'Whenever possible, such statutes must be construed as to avoid a forfeiture of property.'" *Clark*, supra, quoting *State v. Lilliock* (1982), 70 Ohio St.2d 23, 26. Additionally, the Supreme Court of Ohio has held that forfeiture may not be ordered "'unless the expression of the law is clear and the intent of the legislature manifest.'" *Clark*, supra, quoting *Lilliock*, 70 Ohio St.2d at 26; see, also, *Dayton v. Boddie* (1984), 19 Ohio App.3d 210.

**{¶23}** R.C. 2981 governs forfeiture of a criminal defendant's property and provides, in part:

> **(A)  The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:**

* * *
**(2) Proceeds derived from or acquired through the commission of an offense[.]**

R.C. 2981.02. For cases involving unlawful goods and activities, R.C. 2981.01(A)(11)(a) defines the term "proceeds" as "any property derived directly or indirectly from an offense. 'Proceeds' may include, but is not limited to, money or any other means of exchange. 'Proceeds' is not limited to the net gain or profit realized from the offense."

{¶24} Additionally, R.C. 2981.03 provides, in pertinent part:

**(A)(1) The state or political subdivision acquires provisional title to property subject to forfeiture under this chapter upon a person's commission of an offense giving rise to forfeiture, subject to third party claims and a final adjudication under section 2981.04 or 2981.05 of the Revised Code. * * ***
* * *
**(5)(a) In any action under section 2981.04 or 2981.05 of the Revised Code, if a property owner or third party claims lawful interest in the subject property alleged to be proceeds, the state or political subdivision has provisional title and a right to hold property if it proves both of the following by a preponderance of the evidence:**

**(i) The interest in the property was acquired by the alleged offender * * * during the commission of the offense or within a reasonable time after that period.**

**(ii) There is no likely source for the interest in the property other than as proceeds derived from or acquired through the commission of the offense.**

See, also, *Watkins*, 2008-Ohio-6634, at ¶33 (finding that, where the State demonstrates by a preponderance that both R.C. 2981.03(A)(5)(a)(i) and

-12-

2981.03(A)(5)(a)(ii) are present, a rebuttable presumption arises that the property is subject to forfeiture).

{¶25} Further, trial courts are not limited to considering only the underlying criminal offense when deciding a forfeiture action, and may pursue property derived from any act that would constitute a felony drug offense, regardless of a defendant's conviction or acquittal on such an offense. *Watkins*, 2008-Ohio-6634, at ¶31, citing *State v. Parks*, 8th Dist. No. 90368, 2008-Ohio-4245, ¶26; *In re Seizure of 1998 Dodge Durango*, 6th Dist. No. L-04-1295, 2005-Ohio-6004, ¶12.

{¶26} Courts have considered the following situations to be indicative that money was derived from a criminal drug offense: 1) where large amounts of currency appear in small denominations, *State v. Owens*, 9th Dist. No. 23267, 2007-Ohio-49, ¶15; *State v. Balwanz*, 7th Dist. No. 02-BE-37, 2004-Ohio-1534, ¶50; and, 2) where currency is discovered among items associated with drug trade, such as scales, or drugs themselves. *State v. Harris*, 12th Dist. No. CA2007-04-089, 2008-Ohio-3380, ¶28.

{¶27} Here, law enforcement officers discovered in the residence $3,821 in cash in small denominations, a scale, and one hundred nineteen grams of cocaine worth approximately $9,000 to $11,000, some of which was individually wrapped in forty-four small plastic baggies. Additionally, the officers discovered plastic

baggies with torn corners and a plastic baggie with cocaine residue in the residence trash. Further, the officers discovered a digital camera, multiple pairs of brand new athletic shoes in the boxes, a video gaming system, multiple televisions, a computer, and a surround-sound system in the residence. Finally, during their interrogation of Brownridge, the officers elicited statements from her that she had been unemployed for seven months, and had previously earned only $7 per hour at McDonald's. Additionally, although Brownridge apparently told the officers that the money belonged to her sister Chimere, her credibility is weakened by the fact that she did not delineate how much of the money belonged to Chimere, explain why the cash was found in three separate areas of the residence, including on the dresser in Brownridge's bedroom and in a man's jacket pocket in Brownridge's bedroom closet, or offer any witnesses, including Chimere, to prove that the money did, in fact, belong to Chimere.

{¶28} In light of the preceding, we conclude that the trial court possessed some competent, credible evidence that the $3,821 was subject to forfeiture because Brownridge acquired the cash during the commission of a drug trafficking offense, and there was no other likely source of the cash. See *Watkins*, 2008-Ohio-6634, at ¶33; R.C. 2981.02(A)(2) and 2981.03(A)(5)(a).

{¶29} Accordingly, we overrule Brownridge's first assignment of error.

*Assignment of Error No. II*

**{¶30}** In her second assignment of error, Brownridge argues that the trial court erred and abused its discretion by imposing an extreme and unfair sentence. Specifically, she claims that, given her background and that she never denied that she possessed and used cocaine, and that lesser sentences had been imposed upon similar offenders for similar offenses, the sentence the trial court imposed on her was extremely harsh. We disagree.

**{¶31}** When an appellate court reviews the sentencing decision of a trial court, it must conduct a meaningful review of the sentencing decision.[1] *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶8, citing *State v. Carter*, 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh*, 2007-Ohio-5774, at ¶8, citing *Carter*, 2004-Ohio-1181, at ¶44; R.C. 2953.08(G).

**{¶32}** In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme

---

[1] We note that the Supreme Court of Ohio's plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, established a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing review standard adopted by three dissenting Justices in *Kalish*, we note that our decision in this case would be identical under the *Kalish* plurality's two-part test.

Court of Ohio severed portions of Ohio's felony sentencing law after finding them unconstitutional. The Court held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster*, 109 Ohio St.3d 1, at paragraph seven of the syllabus. Further, the Court stated that "[o]ur remedy does not rewrite the statute, but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings [of fact] that Blakely prohibits." *Foster*, 109 Ohio St.3d 1, at ¶102. Additionally, the Court held that "[c]ourts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range." *Foster*, 109 Ohio St.3d 1, at ¶105.

{¶33} Trial courts are still required to comply with R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14. *Foster*, 109 Ohio St.3d 1, at ¶36. Additionally, R.C. 2929.11 and 2929.12 do not mandate judicial fact-finding; rather, in exercising its discretion, a trial court is merely required to "consider" the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12. *Foster*, 109 Ohio St.3d 1, at ¶¶36-42. See, also, *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶38; *State v. Roehl*, 3d Dist. No. 4-07-

10, 2008-Ohio-85, ¶10; *State v. Estep*, 3d Dist. No. 9-07-16, 2007-Ohio-6713, ¶12.

**{¶34}** Here, the trial court specifically provided in its judgment entry of sentencing that it had considered the record, the oral statements, the pre-sentence investigation report, the principles and purposes of sentencing under R.C. 2929.11, and appropriate factors of seriousness and recidivism under R.C. 2929.12. Therefore, although the trial court was not required to state that it had considered each section of the sentencing statute pursuant to *Foster* and *Mathis*, the record reflects that it properly considered the statutory sentencing factors. Additionally, the prison sentences imposed by the trial court were within the statutory range for the offenses. See R.C. 2929.14(A).

**{¶35}** Accordingly, we overrule Brownridge's second assignment of error.

**{¶36}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

{¶37} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. In her second assignment of error, Brownridge alleges that the trial court abused its discretion by imposing an extreme and unfair sentence. Brownridge's appeal of her felony sentence was not pursuant to R.C. 2929,12, which, in my opinion would require an abuse of discretion standard. Thus, the standard used to review this case, as set forth in R.C. 2953.08(G) is the proper standard of review herein.

/jlr