JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Lavar Parks ("Parks"), appeals his conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2006, Parks was charged with two counts of drug trafficking and one count of possession of drugs and possessing criminal tools. Major drug offender specifications were attached to the drug possession charge and one count of drug trafficking.
 {¶ 3} Parks filed a motion to suppress, which the trial court denied after a full hearing. The matter proceeded to a jury trial, where the following evidence was adduced.[1]
 {¶ 4} In December 2006, the Cuyahoga County sheriffs office received a tip that Parks, who was wanted on an outstanding warrant, was staying at an apartment on Edna Avenue in Cleveland. Police went to the apartment and the landlord granted them access. The landlord had allowed Parks to stay in a spare bedroom in her apartment. Police showed the landlord a picture of Parks and she verified his identity. Police looked in the bedroom where the landlord indicated Parks resided and observed a bag of suspected marijuana, a box of plastic baggies, and a digital scale in plain view. One detective left to get a search warrant while other officers remained to secure the area.
 {¶ 5} Parks returned to the apartment and was arrested on the outstanding warrant. Police discovered 3.4 grams of suspected marijuana, 4.3 grams of suspected cocaine, and $2,000 cash in Parks' pockets. When the officers searched Parks' room, they found 112.5 *Page 4 
grams of suspected crack cocaine, 27.1 grams of marijuana, and a second digital scale.
 {¶ 6} The Ohio Bureau of Criminal Investigations ("BCI") tested the suspected drugs, and determined the substances were crack cocaine, cocaine, and marijuana. At trial, defense counsel stipulated to the BCI report, which indicated that the items seized from Parks tested positive and listed the various weights of the drugs.
 {¶ 7} Sondra Hemphill, Parks' girlfriend, testified that Parks lived with her on East 78th Street in Cleveland in December 2006 and that the $2,000 seized from Parks belonged to her. Hemphill's friend also testified that Parks lived with Hemphill, but conceded that she did not see him all the time.
 {¶ 8} The jury convicted Parks of count two, possession of crack cocaine in an amount less than 100 grams. The jury also convicted Parks of count three, the lesser included offense of possession of marijuana in an amount less than 200 grams. The jury acquitted Parks of counts one and four, trafficking in drugs and possessing criminal tools. The court sentenced him to six months in prison, to run concurrent with his sentence in another case.
 {¶ 9} Parks appeals his conviction, raising three assignments of error for our review. In his first assignment of error, he argues that the trial court violated his constitutional rights when it instructed the jury regarding stipulations made during trial.
 {¶ 10} During trial, defense counsel and the State stipulated to the authenticity of the BCI lab report, which had already been admitted into evidence. The purpose of the stipulation was to relieve the BCI lab technician from personally appearing in court to testify regarding the contents of the report. *Page 5 
 {¶ 11} A stipulation is a voluntary agreement between opposing parties concerning the disposition of some relevant point so as to obviate the necessity for proof or to narrow the range of litigable issues.DeStephen v. Allstate Ins. Co., Franklin App. No. 01AP-1071, 2002-Ohio-2091; State v. Dowd, Cuyahoga App. No. 80990, 2002-Ohio-7061. A stipulation of fact renders proof of that specific fact unnecessary; once a stipulation is entered into by the parties and accepted by the court, it is binding upon the parties and that fact is deemed adjudicated for purposes of determining the remaining issues in that case. Dowd. A party who has agreed to a stipulation cannot unilaterally retract or withdraw from it. Id.
 {¶ 12} In Dowd, the court instructed the jury that there was a stipulation as to a thumbprint belonging to the defendant. The court stated to the jury: "There was an agreement as to the thumbprint that was compared, that it was the defendant's. * * * Now, no further evidence need be brought in on the stipulation. It was an agreed to fact. You are here to find disputed facts not agreed to facts. There is nothing to decide on agreed facts, you just have to accept it." We found no error in the court's instruction as to the stipulated fact.
 {¶ 13} Likewise, in the instant case, we find no error in the court's instruction regarding the stipulated BCI report. The court instructed the jury, in pertinent part, as follows:
 "There were certain agreements known as stipulations. These stipulations were reached between the State and the defendant and are to be accepted by you as facts. For example, it is stipulated and agreed that there has been [testing] of the drug evidence in this case, and it is agreed that [the] lab report * * * indicates accurate and *Page 6 
valid results in weight and analysis of the substances seized in this case * * * in the amounts indicated."
 {¶ 14} Contrary to Parks' assertion that this instruction removed an essential element from the jury's deliberation, that is, whether the substances seized were in fact drugs, we find that the stipulation merely established the validity of the report. Nothing about the stipulation removed from the jury its duty to find that the State proved each element of each offense beyond a reasonable doubt. With the stipulation, the lab report became the factual basis for which the jury could then determine the nature of the proof regarding the type and amount of controlled substances. Through the stipulation, the jury was provided one fact to consider, along with all the other facts presented at trial, to conclude that there was, or was not, sufficient proof of the elements of the offense. Thus, we find no error in the trial court's instructions to the jury.
 {¶ 15} Therefore, the first assignment of error is overruled.
 {¶ 16} In the second assignment of error, Parks argues the conviction in count two should be considered a minor misdemeanor rather than a fifth degree felony for the possession of crack cocaine. Parks claims that because the verdict form stated that the jury found him "guilty of possession of drugs in violation of [R.C. 2925.11], as charged in count two of the indictment," without mentioning the drug he possessed, he cannot be found guilty of a felony. To support his argument, Parks relies on R.C. 2945.75, which provides that "when the presence of one or more additional elements makes an offense one of more serious degree * * * a guilty verdict shall state either the degree of the offense of which the offender *Page 7 
is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 17} Since the first page of the verdict form did not state the degree of the offense or that the offense involved crack cocaine, Parks argues that he could only be found guilty of a minor misdemeanor, which he argues is the least degree of the offense charged. See R.C. 2925.11. Parks also relies on State v. Pelfrey, 112 Ohio St.3d 422,2007-Ohio-256, 860 N.E.2d 735, in which the Ohio Supreme Court held that strict compliance with R.C. 2945.75 is mandatory and that the verdict form "must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at syllabus. The Court found that it was not sufficient, as in this case, that the verdict form incorporated the language of the indictment, that evidence was presented at trial to show the presence of the aggravated element, or that the defendant failed to raise the issue of the inadequacy of the verdict form. Id. at 426.[2]
 {¶ 18} We find that Pelfrey is distinguishable from the case at bar. In the instant case, the verdict form for count two consisted of two pages. Although the first page failed to indicate the specific type of drug or felony level, the second page of the verdict form indicated that the drug was crack cocaine. We make special note here that because the *Page 8 
verdict form did not indicate the felony level, Parks was convicted of the lowest level of possession of crack cocaine, which is a felony of the fifth degree. This is true even though the evidence showed that Parks was found with over four grams of crack cocaine on his person, which is normally a felony of the fourth degree.[3] Since the verdict form did not indicate the level of the felony, the conviction was, by operation of statute, a fifth degree felony.
 {¶ 19} Parks proposes that "the second page of the verdict form cannot bolster the first page because the jury answered the second page, which included the term `crack cocaine,' in the negative. Without an affirmative statement by the jury that an aggravating element — that the drug was crack cocaine — was present, the verdict form defaults to the lowest form of the offense." Although Parks has made a novel argument, we disagree. The second page of the verdict form contained a "further finding" where the jury found that the amount of crack cocaine he possessed "was not" an amount equal to or exceeding one hundred grams. The top of the verdict form stated: "Verdict Form — Count Two, Case Number CR 492225, Page Two." The verdict form consisted of two pages that are to be read in conjunction. Merely because the jury found the amount of the crack cocaine to be less than 100 grams does not mean that the jury was unaware they were finding him guilty of possessing crack cocaine.
 {¶ 20} Within this assignment of error, Parks also argues that the court's finding of *Page 9 
guilt as to the felony was plain error, or in the alternative, his counsel was ineffective. Since we find that there was no error, we need not analyze whether the court committed plain error or counsel was ineffective.
 {¶ 21} Therefore, the second assignment of error is overruled.
 {¶ 22} In the third assignment of error, Parks argues that the trial court improperly ordered the forfeiture of the $2,000 seized from Parks when he was arrested.
 {¶ 23} First, Parks claims that because he should not have been convicted of a felony, the funds cannot be seized.[4] Since we overruled the second assignment of error, and thus affirmed his felony conviction, we find no merit to this argument.
 {¶ 24} Parks also argues that the forfeiture petition was untimely and failed to indicate that the State was seeking to forfeit the currency. We disagree. Although the initial petition did not mention the $2,000, the State filed an amended petition. There appears to be some confusion on when the amended petition was filed, as the petition in the lower court file has a filing stamp for both June 4, 2007 and March 4, 2008. We note, however, that defense counsel stated prior to the commencement of trial that he had received the amended petition and he never objected to the amendment.
 {¶ 25} Finally, Parks argues that the evidence is insufficient to sustain the forfeiture because Parks was not found guilty of drug trafficking and because his girlfriend presented *Page 10 
evidence at the forfeiture hearing that the money belonged to her.
 {¶ 26} Even though the jury acquitted Parks on the drug trafficking and possession of criminal tools counts, that acquittal does not mean that forfeiture of items cannot be ordered. State v. Griffie, Cuyahoga App. No. 89009, 2007-Ohio-5325. In State v. Fannin, Cuyahoga App. No. 79991, 2002-Ohio-6312, we addressed a similar argument concerning cash recovered from the defendant following his arrest on drug possession charges. We found that "[although the jury acquitted [the defendant] of criminal tool charges relating to the money, that fact alone did not change the character of the money as contraband. The elements of a charge of possessing criminal tools require that the offender use the tool with a criminal purpose. * * * Contraband is an item that is illegal because of its possession in the context of committing an act. Even though the jury did not find that [the defendant] used the money with a criminal purpose, that money could still be considered part of the criminal act."
 {¶ 27} Under former R.C. 2925.42(A), a person who is convicted of or pleads guilty to a felony drug abuse offense loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies: (a) the property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act or (b) the property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act. The state *Page 11 
must prove its entitlement to forfeiture by a preponderance of the evidence. See former R.C. 2925.42(B)(3)(a).[5]
 {¶ 28} The state has the burden of proving that the money in defendant's possession was used illegally. "Mere possession of cash is not unlawful. * * * To prove that money is contraband and therefore subject to forfeiture, `the state must demonstrate that is it [sic] more probable than not, from all of these circumstances, that the defendant used [the money] in the commission of a criminal offense.'" State v.Blackshaw (May 29, 1997), Cuyahoga App. No. 70829, quoting State v.Colston (1990), 66 Ohio App.3d 423, 431, 584 N.E.2d 1336, internal citations omitted; State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804.
 {¶ 29} One factor that courts have looked at is whether the cash is in small denominations for making change. See State v. Owens, Summit App. No. 23267, 2007-Ohio-49; State v. Larios, Cuyahoga App. No. 83507,2004-Ohio-5730; State v. Alicea (Nov. 17, 1994), Cuyahoga App. No. 66411; State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804. In the instant case, Parks was arrested with a large amount of rolled bills. The arresting officer testified that Parks was able to tell him the exact amount he had on him and that the roll consisted of mostly $20 bills with some $100 bills. Although Parks' girlfriend testified that the money was from her car accident settlement months earlier, a reasonable trier of fact could have concluded by a preponderance of the evidence that the large amount of cash in Parks' pocket had been used to commit or facilitate his crimes. Thus, upon review, *Page 12 
we find that the trial court could reasonably infer from the facts in evidence the money in question was property subject to forfeiture.
 {¶ 30} Therefore, the third assignment of error is overruled.
 {¶ 31} Accordingly, the judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH SEPARATE OPINION.
[1] Parks does not appeal the trial court's denial of his motion to suppress; thus, we will not discuss the evidence presented at that hearing.
[2] In a more recent decision, the Court determined that the holding in Pelfrey is applicable to charging statutes that contain separate sub-parts with distinct offense levels, such as R.C. 2925.11. State v.Sessler, Slip Opinion No. 2008-Ohio-3180.
[3] If the amount of the drug involved equals or exceeds one gram but is less than five grams of crack cocaine, possession is a felony of the fourth degree. R.C. 2925.11(C)(4)(b).
[4] Parks cites State v. Horton (1993), 91 Ohio App.3d 464,632 N.E.2d 993, where the court held that a felony conviction is required in order for property to be declared contraband under R.C. 2933.42(B) and subject to forfeiture under R.C. 2933.43(C).
[5] Effective July 1, 2007, the General Assembly changed the law relating to drug forfeiture by adopting R.C. Chapter 2981.