[Cite as *State v. Fort*, 2014-Ohio-3412.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100346**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RICHARD FORT**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-572511

**BEFORE:** Stewart, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 7, 2014

**ATTORNEY FOR APPELLANT**

James R. Willis
Willis Blackwell & Watson
323 W. Lakeside Avenue, Suite 420
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Katherine Mullin
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1} Defendant-appellant Richard Fort was pulled over for a traffic violation and attempted to flee from police resulting in a high-speed chase. When police caught up with Fort, the investigating officer searched him incident to his arrest and found drugs, drug paraphernalia, a large amount of cash, and several cell phones, among other items. Fort was indicted on multiple counts that all included forfeiture specifications with two counts having major drug offender specifications attached. A jury found Fort guilty of the offenses, and the court found Fort guilty of the major drug offender specifications.

{¶2} On appeal, Fort argues that the trial court erred by determining that the cash and other items seized were proceeds of a criminal offense and, therefore, the court should have granted his motion to return the items. He also argues that the court committed reversible error when it allowed the state to comment on his constitutional right to remain silent upon arrest, and lastly, that the court erred by finding him to be a major drug offender. Finding no merit to Fort's arguments, we affirm the decision of the trial court.

{¶3} Officers Kevin Pozek and Kyle French of the Maple Heights Police Department were involved in the arrest of Fort. Officer Pozek testified that in March 2013, he observed a vehicle drive straight through a turn-only lane. He activated his overhead lights and called for backup assistance. Once the vehicle

stopped, Pozek turned on the personal camera attached to his uniform and approached the vehicle. The driver, later identified as Fort, rolled down his window slightly. Pozek testified that he immediately smelled marijuana and asked Fort where he had stored the marijuana inside of the car. Fort stated that it was inside his pocket and went to reach for it, but Pozek demanded that Fort keep his hands on the steering wheel. Fort then sped away while Pozek was standing next to the driver's side window.

{¶4} Officer French arrived on scene, and the officers pursued Fort in their police vehicles. Fort was eventually apprehended when he stopped his car in a driveway. Pozek patted down Fort and searched the vehicle. Fort had a large amount of cash on him, and inside the vehicle, police found drugs and drug-related items. Specifically, the search yielded $9,436.73, five cell phones, a folding knife, a marijuana cigarette, 31.4 grams of crack cocaine, 8.6 grams of raw marijuana, a bag of coins, 137.7 grams of cocaine, a digital scale, and some electronics and clothing items.

{¶5} Fort was charged with drug trafficking, drug possession, possession of criminal tools, and failure to comply, with forfeiture specifications. The drugs, cash, vehicle, and the contents of the vehicle seized by police were deemed to be contraband or proceeds from illegal activity. Fort pleaded not guilty to the charges and moved to have the cash, vehicle, and personal items returned to him. The

state opposed the motion, and the trial court held a hearing. The court denied Fort's motion in part relating to the cash, vehicle, and personal items, but granted the motion in part as it related to tools Fort needed for work as a handyman.

{¶6} During the trial after the stated rested its case, Fort moved for an acquittal pursuant to Crim.R. 29. With regard to the forfeiture specifications, Fort argued that the state failed to prove that any of the personal items were connected to criminal activity. The court denied the motion in part and granted it in part finding that the state had met its burden in demonstrating that the money, the vehicle, and cell phones were connected to drug trafficking, but that there was inadequate proof with respect to the clothing and other personal items. At the conclusion of trial, Fort again moved for an acquittal relating to the forfeiture specifications and the drug charges. The court denied the motion. The jury found Fort guilty of the offenses with the forfeiture specifications, and the trial court found Fort guilty of major drug offender specifications. Fort was sentenced to 11 years in prison.

{¶7} In his first four of six assignments of error, Fort argues that the trial court erred by denying his motion for the return of the cash and other personal items.

{¶8} Fort first asserts that the trial court violated his due process rights when it did not promptly conduct a hearing or rule on his motion to return the seized

property.   Fort argues that he had a constitutional right to an immediate post-seizure, pretrial hearing and also that he needed the seized money to pay his attorney fees — suggesting that the court's taking 37 days to rule on the motion deprived him of his constitutional right to counsel. We find, however,  that the trial court committed no violation with regard to the timeliness in which it conducted a hearing and ruled on Fort's motion.

{¶9} Fort was arrested on March 12, 2013.   On May 14, 2013, he moved for the immediate return of the cash, the vehicle, and the personal items taken from the vehicle.   The state opposed the motion on May 24, 2013, and the trial court conducted a hearing on June 20, 2013.   Later that day, the court denied the motion in part and granted it in part.   The court considered the motion to be a motion for judicial release based on hardship but determined that in this case the alleged hardship was not financial.

{¶10} R.C. 2981.03(D)(3) provides:

Except when there is probable cause that the property is contraband, * * * a court may conditionally release property subject to forfeiture to a person who demonstrates all of the following:

(a) A possessory interest in the property;

(b) Sufficient ties to the community to provide assurance that the property will be available at the time of trial;

(c) That failure to conditionally release the property will cause a substantial hardship to the claimant.

{¶11} The court properly found that any possible hardship suffered by Fort was not the type of hardship covered under the statute. Under R.C. 2981.03(D)(4), when determining whether a substantial hardship exists, the court must weigh the claimant's alleged hardship from the state's continued possession of the property against the risk that the property will be destroyed, damaged, lost, concealed, or transferred if returned to the claimant. Where withholding property would prevent a legitimate business from functioning, prevent the claimant or an innocent person from maintaining employment, or leave the claimant or an innocent person homeless, release of the property is favored. *Id.* As shown in greater detail when addressing Fort's second assigned error, the court properly analyzed Fort's claims against the state's interest in determining what items — namely the cash — should be returned to Fort.

{¶12} Additionally, Fort was not prejudiced by the court's timing in ruling on the motion, and Fort has not demonstrated that the time it took the court to rule was unreasonable. Furthermore, Fort was not deprived of his right to counsel.

{¶13} Fort retained counsel of his choice on April 5, 2013. On June 3, 2013, Fort was declared indigent by the court, and this same counsel was appointed by the court to represent him. At no time was Fort denied counsel due to his

inability to pay. Additionally, at all times he was represented by the same trial counsel and cites to no authority for the proposition that ruling on his motion within 37 days is any kind of constitutional violation. Fort's first assigned error is without merit.

{¶14} In his second assigned error, Fort argues that the court failed to comply with Crim.R. 12(F) by not making the proper factual findings when it denied his motion for the return of property. We find this argument equally unpersuasive.

{¶15} Crim.R.12(F) states in pertinent part, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." A review of the record demonstrates that the court made the proper findings under Crim.R.12(F) before denying Fort's motion. The transcript from the June 20, 2013 hearing demonstrates that the court found that the items were lawfully seized and that the court balanced the state's interest in preventing the seized items from being "destroyed, damaged, lost, concealed or transferred" if returned, with that of any alleged hardship suffered by Fort. The court rejected Fort's argument that without the cash he was unable to pay his attorney fees and additionally stated, "no business will fail to operate and no loss of employment or housing has been demonstrated." Fort's second assigned error is overruled.

{¶16} In his third and fourth assigned errors, Fort argues that the money, vehicle, cell phones, electronics, knife, and scale were not shown to be proceeds of

criminal activity and should not have been subject to forfeiture. He also argues that the court's finding that these items were proceeds was based on insufficient evidence.

{¶17} In general, forfeiture is disfavored in Ohio. *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, 880 N.E.2d 150 (3d Dist.). The state bears the burden of proving by a preponderance of the evidence that property is subject to forfeiture. *See State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634. On review, an appellate court may not reverse the trial court's decision where there is "'some competent, credible evidence going to all the essential elements of the case.'" *Watkins* at _ 34, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), at syllabus.

{¶18} Under R.C. 2981.02, there are three kinds of property that may be forfeited to the state: (1) contraband involved in an offense, (2) proceeds derived from or acquired through the commission of an offense, or (3) an instrumentality that is used in or intended to be used in the commission or facilitation of a felony. "Contraband" is defined as property that is illegal for a person to acquire or possess under a statute, ordinance, or rule, or that a trier of fact determines to be illegal to possess by reason of the property's involvement in an offense. R.C. 2901.01(A)(13). R.C. 2981.01(A)(11)(a) defines the term "proceeds" as "any property derived directly or indirectly from an offense. 'Proceeds' may include,

but is not limited to, money or any other means of exchange. 'Proceeds' is not limited to the net gain or profit realized from the offense." "Instrumentality" refers to property that is otherwise lawful to possess but is used or intended to be used in the commission of an offense. R.C. 2981.02(A)(3).

{¶19} Contrary to Fort's arguments, the state demonstrated that the cash and personal items seized were instrumentalities or proceeds of criminal activity. The state's evidence showed that a large amount of cash in small denominations was found on Fort incident to his arrest. Fort offered no documented source of income to support legal employment. In fact, Fort testified that he had not disclosed any taxable income for several years. It goes without noting that the drugs and drug paraphernalia found in the vehicle demonstrated criminal activity. However, Fort testified that he had lent his car to a friend a few days prior to the arrest and was unaware of the drug items in his vehicle and also stated that the money found on him was won from gambling. Apparently, the jury was unconvinced.

{¶20} Although the state's evidence was circumstantial, it demonstrated by a preponderance of the evidence that the vehicle, knife, and scale were used to facilitate a drug operation and that the money and other forfeited personal items were proceeds from the illegal drug trade as opposed to being the fruits of Fort's labor as a handyman or of his gambling prowess. Verdicts based on circumstantial evidence will not be disturbed based on a claim of insufficiency unless it is apparent

that reasonable minds could not come to the conclusion reached by the trier of fact.

*State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 22.

**{¶21}** In *State v. Parks*, 8th Dist. Cuyahoga No. 90368, 2008-Ohio-4245, we sustained a forfeiture challenge based on a claim of insufficient evidence where the defendant was convicted of drug possession but argued on appeal that the state had not met its burden of demonstrating that the money seized was subject to forfeiture because the jury acquitted him of drug trafficking and possession of criminal tools, and the defendant's girlfriend testified that the money seized was hers. *Id.* at _ 25-28. In upholding the forfeiture, we reasoned that based on the evidence presented at trial, a reasonable trier of fact could have concluded by a preponderance of the evidence that the large amount of cash found in small denominations inside the defendant's pocket had been used to commit or facilitate criminal activity. *Id.*

**{¶22}** Similarly in *State v. Brownridge*, 3d Dist. Marion No. 9-09-24, 2010-Ohio-104, the reviewing court overruled the defendant's claim challenging the sufficiency of the evidence as to whether cash seized upon arrest constituted proceeds from criminal activity. In that case, the Third District held that the trial court properly considered that money was derived from a criminal drug offense where large amounts of cash appeared in small denominations. The court also

found that where cash was discovered among items associated with drug trade, the money was likely connected to criminal activity. *Id*. at _ 25.

{¶23} As mentioned earlier, the state pointed out that Fort's lack of tax filings in the previous five years suggested that he was not employed. The state also pointed out that Fort was arrested in another case in April 2013 where he was in possession of cocaine and $5,203. In that case, he also fled from police before being arrested. Since these two cases happened within a short span of time, these large sums of money in small denominations evidenced Fort's continued involvement in criminal activities. We overrule Fort's third and fourth assignments of error.

{¶24} In Fort's fifth assignment of error, he argues that the trial court violated his due process rights when it allowed the state to ask him questions regarding his conversation with the police when he was arrested. He argues that the trial court committed reversible error when the state asked a question relating to Fort's post-arrest conversation with police.

{¶25} On cross-examination, the prosecutor asked Fort to describe details about the chase on the day he was arrested. Fort testified that when the police stopped him after the chase, he threw a gun out of the window in order to avoid having the police find it. The prosecutor then asked Fort, "[a]t any point during your arrest did you tell police?" Fort's attorney objected and stated that "[h]e's

not obligated to tell the police anything including his name." The court sustained this objection. Fort argues that despite the court's ruling, this line of questioning constitutes reversible error pursuant to *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However we find *Doyle* is inapplicable to this case.

{¶26} In *Doyle*, the United States Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618. In contrast, in this case the state's inquiry about whether Fort told the police about the gun was not asked in order to impeach any version of events previously offered by Fort.

{¶27} On direct examination, Fort testified that after he won money gambling, he asked a friend to borrow a gun for protection in the event that he was robbed. Fort stated that once he realized he was being pulled over by the police, he panicked due to his having the gun and his prior run-ins with police. Fort admitted to being in illegal possession of the gun and explained to the jury that his fear of police uncovering the gun was the reason he fled. Fort was not offering any explanation related to the violations for which he was charged and the state's question did not seek to disprove any prior account of the events. *Doyle* is therefore not on point. Additionally, the trial court sustained the objection before Fort had a chance to answer the question, so the jury remained unaware of whether

Fort said anything to the police about the gun. We see no prejudice derived from the question. Fort's fifth assigned error is overruled.

{¶28} In Fort's sixth and final assigned error, he argues that the trial court erred when it found him to be a major drug offender. According to Fort, the trial court's finding violates the United States Supreme Court decision in *Alleyne v. United States,* 570 U.S. 1___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Fort argues that under *Alleyne*, only the jury can make a determination regarding any fact that increases his sentence. Fort is correct, however, *Alleyne* is inapplicable to the facts in this case.

{¶29} In *Alleyne*, the jury relied on the testimony of the victim of an armed robbery that one of the perpetrators possessed a gun. The trial court relied on the same testimony to determine that Alleyne or his accomplice brandished a gun. The testimony was the same, but the findings were different. The jury found that Alleyne possessed a gun, but made no finding with regard to whether the weapon was brandished. The court, however determined that the gun was brandished. The Supreme Court reviewed the statutory punishment structure, which included a mandatory minimum sentence of five years if a crime of violence was committed while the offender carried a firearm, seven years if the firearm was brandished, and ten years if the firearm was discharged during the crime. 18 U.S.C. 924(c)(1)(A). The crime was otherwise punishable by a term of imprisonment not exceeding 20

years. 18 U.S.C. 1951(a). The court held that where facts were not found by a jury that enhanced the mandatory minimum penalty for a crime, principles of the Sixth Amendment were violated. *Alleyne* at paragraph one of the syllabus. Specifically, "[b]ecause mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* Indeed,

> "[j]uries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." [*Alleyne* at fn.1] "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* [at 2162.]

*People v. Osuna*, 225 Cal.App.4th 1020, 1039, 171 Cal.Rptr.3d 55 (2014).

{¶30} Ohio's major drug offender specifications designate a defendant convicted of possessing or trafficking a certain amount of drugs a major drug offender and require courts to impose as a mandatory sentence the maximum prison term prescribed for the commission of the offense. For example, R.C. 2925.03(C)(4) provides in part:

> (f) If the amount of the drug involved equals or exceeds *twenty-seven grams but is less than one hundred grams* of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, *trafficking in cocaine is a felony*

*of the first degree*, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

(g) If the amount of the drug involved equals or exceeds *one hundred grams of cocaine* and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a *felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.*

(Emphasis added.) So in order for a jury to find defendants guilty of a first-degree felony offense of drug trafficking or drug possession dealing with cocaine, it must find that they possessed over 27 grams of the drug. For a court to sentence defendants as major drug offenders, the court must find that they possessed over 100 grams of cocaine. These are two different findings that rely on the same evidence.

{¶31} In *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held that judicial fact-finding that increases the mandatory minimum sentence for a crime is permissible under the Sixth Amendment. In *Alleyne*, the court specifically overruled *Harris* and held that the imposition of a mandatory minimum sentence above the normal minimum

punishment set by statute is an increase in the punishment a defendant may receive. Therefore, elements necessary for a court to impose such an enhancement must be found by the trier of fact.

{¶32} The Supreme Court's decision in *Alleyne* leads to the conclusion that Ohio's major drug offender statutes could be constitutionally infirm where a trial court makes factual determinations, apart from those made by the jury, that are used to enhance a defendant's minimum sentence. But this is not the scenario we have before us. In Fort's case, the jury made the determination that he possessed over 100 grams of cocaine. As a result, the court did not have to make any factual determination that enhanced the minimum penalty of an offense in contravention of the dictates of the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and now *Alleyne*. The enhancing element was found by the jury.

{¶33} While the jury was only required to find that Fort possessed more than 27 grams of cocaine in order to find him guilty of a first-degree felony, the jury found that appellant possessed over 100 grams. The transcript provides, "[w]ith respect to the further finding, we the jury in this case find that the [appellant] is guilty of trafficking in drugs. We further find that the amount of the controlled substance in Count 1, to-wit, cocaine, was an amount at least equal to or in excess of a hundred grams." Tr. 228. Therefore, the fact necessary for the court to find

that Fort is a major drug offender and sentence him to the maximum term of incarceration is a fact found by the jury. Therefore, Fort's Sixth Amendment right to a jury trial was not violated by the court's finding. This final assigned error is overruled.

{¶34} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR