[Cite as *State v. Dues*, 2014-Ohio-5276.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100861**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JERAEL U. DUES**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-565262-A

**BEFORE:** McCormack, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 26, 2014

**ATTORNEY FOR APPELLANT**

Jeffry F. Kelleher
Jeffry F. Kelleher & Associates, Co.
1540 Leader Bldg.
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Erica Barnhill
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Jerael U. Dues, appeals from his conviction for multiple counts of drug offenses. The events leading to Dues's conviction are largely undisputed. The police officers arrived at Dues's apartment to execute a warrant for him on a misdemeanor assault charge. No one came to the door. Within minutes of the officers' arrival, Deaunte Bullitt was seen throwing over 100 grams of crack cocaine and $22,000 in cash off Dues's balcony. A search of Dues's apartment uncovered heroin and drug paraphernalia throughout the apartment.

{¶2} Dues and Bullitt were subsequently indicted and tried together for trafficking and possession of both the crack cocaine and heroin. Dues argues on appeal he did not possess the cocaine and should not have been convicted of the drug offenses relating to the cocaine. He also argues the joint trial prejudiced him. After a careful review of the record and pertinent law, we affirm his conviction.

## Substantive Facts and Procedural History

{¶3} At trial, the police officers testified to the following events. On July 19, 2012, three members of the Cuyahoga County Sheriff's Impact Unit, along with Detective Darren Porter from the Richmond Heights Police Department, went to Dues's apartment in Richmond Heights. The apartment was on the third floor of the Richmond Park Apartments. The officers were there to execute a warrant for the arrest of Dues relating to a misdemeanor assault charge.

{¶4} Upon arrival, the officers heard loud music and people talking inside the apartment. They knocked on the door and identified themselves as police officers. The music was turned

down and someone looked out from the door's peephole.  The officers heard people running around and dishes clanging together.   Detective Brian Nolan started to bang on the door and again announced the presence of the police.   Hearing the commotion, a resident from the next unit came out.   Because the apartments have adjacent balconies, Detective Scott Vargo asked for permission to go to the neighbor's balcony to observe Dues's apartment.   The neighbor gave Detective Vargo consent to enter her apartment.

{¶5} As soon as Det. Vargo went to the neighbor's balcony, he saw a male, later identified to be Bullitt, throwing a box off Dues's balcony.   Bullitt then grabbed the rail with both hands and looked down at the rail.   Unsure if Bullitt was going to jump, Det. Vargo ordered Bullitt to lay down on the balcony and yelled to the other officers that a male was throwing items off Dues's balcony. The other three officers then quickly forced their way into Dues's apartment. They found Dues sitting on the couch in the living room. Sgt. Scott Hirko ran to the balcony area and arrested Bullitt, and Det. Porter took Dues into custody as well.

{¶6} Det. Porter then searched the ground below Dues's balcony and found a bag of drugs inside a "GoodSense" sandwich bag box, which later tested to be approximately 100 grams of crack cocaine.   Det. Porter also found, 30 feet away, a bag with a large amount of cash, later determined to be $22,000.

{¶7} Based on the discovery of the drugs and cash, the officers obtained a warrant to search Dues's apartment, where his girlfriend and three-year-old son also resided.   The officers found drugs and drug paraphernalia throughout the apartment.   In the kitchen, they found (1) a bag of heroin in the cupboard, (2) a plastic plate with cut marks and white residue — indicative of its use in cutting, separating, and weighing crack cocaine, (3) two bottles of whey protein — a supplement often used as "cut material" in preparing cocaine for sale, (4) a box of latex gloves

— typically worn when cooking drugs to avoid contamination of the drug, (5) a digital scale in the garbage can in the kitchen, and (6) a large glass measuring bowl with a large amount of white residue — which later tested to be 4.21 grams of cocaine — in the dishwasher rack.

{¶8} In addition, inside the child's bedroom were many small plastic bags with blue stars on them — consistent with the packaging of heroin. In the closet in the master bedroom was an empty, open safe.

{¶9} Dues and Bullitt were indicted in a single indictment. Dues was charged with six counts. He was charged with trafficking (Count 1) and possessing (Count 2) over 100 grams of cocaine; both counts included major drug offender (MDO) specification, a "juvenile" specification, and several forfeiture specifications. He was also charged with trafficking (Count 3) and possession (Count 4) of between five and ten grams of heroin. Finally, he was charged with possession of criminal tools, with forfeiture specifications, and endangering children.

{¶10} At trial, six police officers testified regarding the events that unfolded on the night of July 19, 2012. In addition, Shayna Taylor, the state's forensic chemist, testified that the drug thrown from the balcony tested to be 100.76 grams of cocaine and the drug retrieved from the kitchen cupboard tested to be 7.83 grams of heroin.

{¶11} Dues was found guilty of all six counts and of all of the specifications, except for the forfeiture of the cell phones.[1] At sentencing, the trial court merged drug trafficking and

---

[1] His codefendant Bullitt was found guilty of the drug offenses regarding the cocaine (but not the heroin offenses), as well as possessing criminal tools and tampering with evidence. The court merged the drug counts and sentenced him to 11 years. The court also sentenced him to one year on possessing criminal tools and three years on tampering with evidence. All terms are to run concurrently.

drug possession relating to the cocaine and imposed 11 years on the merged count. The court also merged drug trafficking and drug possession relating to the heroin and imposed eight years on the merged count. Additionally, the court imposed one year on possessing criminal tools. The three terms are to be served concurrently. Dues now appeals, assigning five errors for our review.

> I. The trial court erred and deprived appellant of due process when the court instructed the jury as to Count 1 that the drug involved was cocaine and that the quantity of that drug equaled or exceeded 100 grams; and as to Count 3 that the drug involved was heroin and that the quantity of that drug equaled or exceeded 5 grams but was less than 10 grams; and gave similar instructions as to Counts 2 and 4, thereby relieving the State of is burden to prove every element of the offenses beyond a reasonable doubt.
>
> II. Appellant's right to a fair trial and due process of law was denied because the trial court improperly instructed the jury as to the Major Drug Offender specification and Constructive Possession.
>
> III: The trial court erred and violated appellant's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States when it denied appellant's motion to be tried separately from his codefendant.
>
> IV: Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Section 10, Article I, of the Constitution of Ohio.
>
> V: The trial court erred and deprived appellant of due process when it denied appellant's motion for acquittal because the evidence produced at trial was insufficient to support.

{¶12} We address the assignments of error out of order for ease of discussion. Also, we discuss the second assignment, which concerns the jury instructions regarding MDO and constructive possession, in different parts of the opinion. We begin our analysis with Dues's claim, raised in the second assignment of error, that the trial court improperly instructed the jury regarding constructive possession.

## Jury Instruction Regarding Constructive Possession

**{¶13}** Dues was charged with drug trafficking and drug possession of the cocaine found inside a sandwich bag box that was thrown by his codefendant Bullitt from his balcony minutes after the police knocked at his door.

**{¶14}** Pursuant to R.C. 2925.01(K), "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶15}** Possession of a controlled substance may be actual or constructive. *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist.1993). "Actual possession requires ownership and, or, physical control." *State v. Messer*, 107 Ohio App.3d 51, 56, 667 N.E.2d 1022 (9th Dist.1995).

**{¶16}** Constructive possession, on the other hand, exists when a person "knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. Furthermore, "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object." *Hankerson* at 91.

**{¶17}** Here, the trial court provided the following instruction on possession, actual possession, and constructive possession:

> Possess or possession means having control over the thing or substance but may not be inferred solely on mere access to the thing or substance through ownership or occupation of the premises upon the thing or substance was found. Possession within the meaning of law may be either actual possession or constructive possession.
>
> Actual possession. Actual possession is defined as — a person

exercises actual possession when he knows he has a thing or substance on or about his person.

Constructive possession. Constructive possession is also sufficient to prove possession. Possession may not be inferred from mere access to the thing; however, a person constructively possesses a thing or substance when he knowingly exercises or is able to exercise dominion and control over the thing or substance or over the premises on which the thing or substance is found or concealed, even though the thing or substance is not in his physical possession.

Knowledge of illegal goods on one's property is sufficient to show constructive possession; however, the mere fact that property is located within premises under one's control does not of itself constitute constructive possession. It must also be shown that the person was conscious of the presence of the object.

{¶18} Dues argues the instruction given by the trial court on possession and constructive construction was self-contradictory. Our review, however, indicates the jury instructions given to the jury on construction and related concepts reflect the case law authority regarding these notions. The trial court did not abuse its discretion. Dues's contention lacks merit. This portion of the second assignment of error is overruled.

### Sufficiency of the Evidence

{¶19} Under the fifth assignment of error, Dues argues there is insufficient evidence for his conviction of trafficking and possession of the cocaine thrown from the balcony by Bullitt.

{¶20} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶21}** The officers' testimony showed Bullitt, not Dues, had actual possession of the cocaine, with Bullitt being the one who was seen disposing of the drug. Therefore, to prove Dues's guilt on the offenses regarding the cocaine, the state must produce evidence to show Dues constructively possessed the cocaine. In other words, the state must produce evidence to show Dues knowingly exercised dominion and control over the cocaine. The state's evidence, however, did not have to show the drug was within his immediate possession. *Hankerson*. Although the mere fact that the drug was in Dues's residence is insufficient to establish constructive possession, if the evidence demonstrated that Dues was aware of the drug in his residence and able to exercise dominion or control over the drug, he can be convicted of the cocaine offenses.

**{¶22}** There is no doubt the evidence of Dues's constructive possession of the cocaine was entirely circumstantial. However, we note constructive possession may be proved by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000). The testimony at trial shows that, after the police knocked on Dues's door and announced their presence, no one came to the door. Instead, the officers heard people scurrying and dishes clanging inside the apartment. Bullitt then appeared on Dues's balcony and threw 100 grams of cocaine and $22,000 of cash off the balcony. Once the officers got inside the apartment, they found a measuring cup with cocaine residue in the dishwasher, and drug paraphernalia throughout the apartment — in the kitchen cupboard, dishwasher, garbage can, and the child's bedroom. This evidence, albeit circumstantial, was sufficient for the jury to find Dues constructively possessed the cocaine and trafficked in cocaine. The fifth assignment of error is without merit.

**Joint Trial**

{¶23} Under the third assignment of error, Dues argues the trial court should have ordered a separation of trial.

{¶24} Crim.R. 8(B) permits codefendants to be jointly indicted and tried together as long as they are alleged to have participated in the same act or transaction or in the same course of criminal conduct. *See State v. Cotton*, 2d Dist. Montgomery No. 15115, 1996 Ohio App. LEXIS 5437 (Dec. 6, 1996).

{¶25} Furthermore, we note that the law favors joinder of defendants because it "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Daniels*, 92 Ohio App.3d 473, 636 N.E.2d 336 (1st Dist.1993).

{¶26} Nonetheless, a defendant believing he or she may be prejudiced by a joint trial may move for severance pursuant to Crim.R. 14. Such a defendant, however, carries the burden to affirmatively demonstrate prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶27} We review a trial court's refusal to order separate trials for an abuse of discretion. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981) syllabus.

{¶28} Here, the trial transcript reflects that, less than a week before trial, codefendant Bullitt's counsel filed a motion for a separate trial. Before the commencement of the trial, the trial court heard the motion. Bullitt's counsel indicated that Bullitt's defense would be that, contrary to what the officers would testify, it was Dues, not Bullitt, who threw the cocaine and money from the balcony. Bullitt's counsel indicated that if his client Bullitt were to testify, he would testify that it was Dues, not Bullitt, who threw the drug. Because the two defendants'

defenses would be antagonistic, Bullitt's counsel argued a joint trial would hamper Bullitt's ability to fully "air out" his defense. Bullitt's counsel also argued that if Dues were to testify, Dues would testify Bullitt threw the drug, thereby strengthening the state's case against his client Bullitt.

{¶29} When Dues's counsel heard the suggestion by Bullitt's counsel that Bullitt might testify, Dues's counsel joined the motion for a separate trial. The trial court denied the motion for a separation of trial. Neither Bullitt nor Dues testified at trial. The only evidence presented was the testimony of the officers, who testified Bullitt threw the cocaine.

{¶30} On appeal, Dues argues he was prejudiced by the closing argument made by Bullitt's counsel. Bullitt's counsel suggested that it must be someone who was connected to the apartment that discarded the drug and money. Bullitt's counsel also attempted to minimize Bullitt's role in the drug activities by emphasizing that Bullitt had no car nearby and little cash on his person.

{¶31} Essentially, Dues is arguing that he and his codefendant, by each attempting to exculpate himself and inculpate the other, had antagonistic defenses, and he was therefore prejudiced by a joint trial. We recognize that in some cases, codefendants' defenses may be irreconcilable to the point that severance is required. However, mutually antagonistic defenses are not prejudicial per se. *See Daniels*, 92 Ohio App.3d 473, 636 N.E.2d 336, citing *Zafiro v. U.S.*, 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

{¶32} In the instant joint trial, the state presented the police officers' testimony that they heard scuffling noises from Dues's apartment after the police announced their arrival. Within minutes, 100 grams of cocaine and $22,000 were thrown from Dues's apartment. Neither defendant chose to testify and offer his own account of the event, and the jury was left to

determine, from the officers' testimony, Dues's and Bullitt's respective role, if any, in the drug offenses. Because Bullitt did not testify, the only evidence presented showed Bullitt, not Dues, threw the drug and money. Therefore, it is hard to see how Dues was prejudiced by the joint trial, or how a separate trial would have resulted in a more favorable outcome for Dues.

{¶33} Although Bullitt's counsel at closing tried to minimize Bullitt's role, intimating it was Dues who threw the drugs, the transcript reflects that the jury was properly instructed by the trial court that counsel's argument in opening and closing was not evidence.

{¶34} Having reviewed the record, we conclude the trial court properly exercised its discretion in not ordering a separate trial. The third assignment of error is without merit.

**Jury Instruction Regarding the Amount of Drugs**

{¶35} Under the first assignment of error, Dues claims that the jury instructions given for Count 1 (trafficking cocaine) and Count 3 (trafficking heroin) improperly relieved the prosecution of the burden of having to prove the amount of the cocaine and heroin in these two counts. He draws our attention to page 708 of the trial transcript, where a conjunctive word "and" appears to be missing when the trial court read the jury instructions on these two counts.

{¶36} The *written* jury instructions from which the trial court read state as follows:

> Before you can find the defendants guilty of trafficking, you must find beyond a reasonable doubt that on or about July 18th of 2012 and in Cuyahoga County, Ohio, the defendants knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance, when the offender knew or had reasonable cause to believe that the controlled substance was intended for sale or resale by the offender or another person *and* the drug involved in the violation

(As to Count One) is cocaine or a compound, mixture, preparation, or substance containing cocaine and the amount of the drug involved equals or exceeds one hundred grams of cocaine; and

(As to Count Three) *and* the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin and the amount of the drug involved equals or exceeds five grams but is less than ten grams.

(Emphasis added.)

**{¶37}** However, page 708 of the transcript reflects that when reading this portion of the instructions to the jury, the trial court inadvertently omitted the conjunctive word "and" (italicized). Dues argue that, without the word "and," the jury instructions would appear to be telling the jury that the drug involved *is* cocaine over 100 grams of cocaine as to Count 1 and heroin between five and ten grams as to Count 3. Dues argues the omission thus improperly relieved the state of its burden to prove the amount of drugs found.

**{¶38}** An identical issue was raised by Dues's codefendant Bullitt, in *State v. Bullitt*, 8th Dist. Cuyahoga No. 100885, 2014-Ohio-5138. After a careful review of the record, we conclude, as did the panel in *Bullitt*, that this claim is without merit.

**{¶39}** We begin by noting that jury instructions are to be viewed as a whole to determine whether they contain prejudicial error. *Bullitt* at ¶ 6, citing *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

**{¶40}** Neither Dues nor Bullitt objected to the missing "and" when these jury instructions were read by the trial court. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 29, quoting Crim.R. 30(A). For us

to notice plain error, "the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *Steele* at ¶ 30.

{¶41} First, as the panel in *Bullitt* noted, the state's forensic chemist testified that the cocaine retrieved from the scene weighed 100.76 grams and the heroin 7.83 grams. The weight and type of the drugs found in the scene were not contested issues at trial. *Bullitt,* 8th Dist. Cuyahoga No. 100885, 2014-Ohio-5138, at ¶ 10.

{¶42} More importantly, as the panel observed in *Bullitt*, the jury instructions in this case were extensive. There were several other occasions where the trial court instructed the jury on the type and weight of the drug it was required to find beyond a reasonable doubt before finding Dues and Bullitt guilty of the trafficking charges. For example, on page 709 of the transcript, immediately following the challenged portion of the instructions, the trial court further instructed the jury on the cocaine trafficking charge (Count 1) and heroin trafficking charge (Count 3). The court stated:

> You will determine from these facts and circumstances whether there existed at the time in the mind of the defendants an awareness of the probability that they prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed a controlled substance, to wit, as to Count 1, a substance containing cocaine, and the amount of the drug involved equals or exceeds 100 grams of cocaine, and as to Count 3, a substance containing heroin, and the amount of the drug involved equals or exceeds 5 grams but is less than 10 grams.

{¶43} Finally, as the panel also noted in *Bullitt*, the *written* jury instructions were provided to the jury for use during its deliberations. The written jury instructions did not contain the glitch and clearly required the jury to find, beyond a reasonable doubt, that the

defendants trafficking in over 100 grams of cocaine and 5 grams of heroin before finding them guilty of trafficking in cocaine (Count 1) and heroin (Count 3).

{¶44} We therefore conclude, as did the panel in *Bullitt,* 8th Dist. Cuyahoga No. 100885, 2014-Ohio-5138, the defendants were not prejudiced by what appeared to be an inadvertently omitted word in the first of several instructions read to the jury addressing the state's burden regarding the type and weight of the drugs found. The first assignment of error lacks merit.

### Jury Instruction Regarding MDO

{¶45} Under the second assignment error, Dues also claims that the trial court improperly instructed the jury regarding the MDO specification.

{¶46} Ohio's MDO specification designates a defendant as such who is convicted of trafficking or possessing a certain amount of drugs. As pertinent to this case, a defendant trafficking or possessing over 100 grams of cocaine is a MDO. R.C. 2925.03(C)(4)(g) and 2925.11(C)(4)(f).

{¶47} R.C. 2941.1410 ("Specification that offender is a major drug offender") sets forth the general statutory framework for MDO. It provides that "the determination by a court that an offender is a major drug offender is precluded unless the indictment * * * specifies that the offender is a major drug offender." R.C. 2941.1410(A). The statute also states that "[t]he *court* shall determine the issue of whether an offender is a major drug offender." (Emphasis added.) R.C. 2941.1410(B).

{¶48} When a drug offender is found to be a MDO, the penalty is enhanced. As amended by H.B. 86, R.C. 2925.03(C)(4)(g) and 2925.11(C)(4)(f) provide that if the state proves the defendant is a MDO, the court must impose the mandatory maximum prison term prescribed for first-degree felony — 11 years.

**{¶49}** As a matter of background, we note that R.C. 2941.1410(B), as worded, requires the *trial court* to determine the issue of whether an offender is a MDO. This appears to be inconsistent with the principle that elements necessary for a penalty enhancement must be found by the *trier of fact*, not the court. *See State v. Fort*, 8th Dist. Cuyahoga No. 100346, 2014-Ohio-3412, ¶ 28, citing *Alleyne v. United States*, 570 U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Indeed, this court noted in *Fort* that the United States Supreme Court's decision in *Alleyne* appears to lead to the conclusion that Ohio's major drug offender statutes could be constitutionally infirm where a trial court makes factual determinations to enhance a defendant's sentence. *Fort* at ¶ 32.

**{¶50}** The instant case does not have an *Alleyne* problem, however. A review of the indictment shows that Count 1 (cocaine trafficking) and 2 (cocaine possession) charged Dues with trafficking and possessing *over 100 grams of cocaine*. Because of the way Counts 1 and 2 were charged, it was the jury who determined the weight of the drug — the element necessary to enhance the penalty. Once the jury found Dues guilty of these two counts, the MDO determination was automatic. Indeed, the jury in this case determined Dues was a major drug offender, based on its finding that he possessed over 100 grams of cocaine. What occurred in this case does not run afoul of *Alleyne*.

**{¶51}** On appeal, Dues does not raise the issue of whether the MDO specification should be decided by the court or the jury. Instead, he raises a rather novel claim. He argues the jury cannot possibly find him to be a MDO, given how the term is defined in R.C. 2929.01(W).

**{¶52}** R.C. 2929.01(W) defines MDO as "an offender who *is convicted of* or pleads guilty to the possession or sale of a certain quantity of drugs, for example, at least one hundred grams of

cocaine * * *." (Emphasis added.) Here, the trial court instructed the jury on MDO in accordance with the definition in R.C. 2929.01(W).

**{¶53}** Dues argues the jury cannot possibly find that he is "convicted of" possession or sale of 100 grams of cocaine, because, at the time the jury was deliberating this issue, he had not been "convicted" of that offense yet.

**{¶54}** This argument is without merit. Under the very literal interpretation of R.C. 2929.01(W) Dues advocates, no drug offender could ever be found a MDO, either by the trial court or by the jury, because the word "conviction" means a finding of guilt *and* a sentence.

**{¶55}** We must construe statutes to avoid unreasonable or absurd results, *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 25. For that reason, we reject Dues's argument. The portion of the second assignment of error regarding the jury instruction on MDO specification is without merit.

## Ineffective Assistance of Counsel

**{¶56}** Under the fourth assignment of error, Dues claims his counsel provided constitutionally ineffective assistance at his trial.

**{¶57}** In order for Dues to prevail on the ineffective assistance of counsel claim, he must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001).

{¶58} Here, Dues contends that his trial counsel's performance was constitutionally deficient because counsel failed to object to faulty jury instructions. He also claims counsel failed to preserve the issue for review in not renewing his motion for a separate trial at the close of the state's case. As we have discussed in the foregoing, Dues was not prejudiced by any of these claimed errors. Therefore, his ineffective assistance claim lacks merit.

{¶59} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR